ALBANY,
Feb. 1808.

Tillotson
v.
Cheetham.

## Tillotson *against* Cheetham.

THIS was an action for a libel, published by the defendant, in a paper, called the " *Republican Watch Tower*." After an interlocutory judgment for a want of a plea, a writ of inquiry of damages was issued, and was executed by the sheriff of the county of *Albany*, on the 22d day of *October*, 1806, at a circuit court, before Mr. Chief Justice *Kent*. On the assessment of damages, the plaintiff's counsel produced a newspaper, as the one described in the declaration, dated the 17th *July*, 1805, entitled " *Republican Watch Tower*," and offered to read it to the jury, as containing the libel charged in the declaration.(*a*) This

In an action for a libel, the defendant suffered a judgment by default, for want of a plea; and the writ of inquiry of damages, was executed before a judge, at the circuit. On a motion to set aside the assessment of damages, it was held, that by the interlocutory judgment, the fact of the publication of the libel, and the truth of the *innuendoes*, were admitted; that the defendant is not to be allowed to call the attention of the jury to the other paragraphs contained in the publication, to a different meaning of the libellous words, than that set up by the plaintiff; and that the defendant could not offer in evidence, in mitigation of damages, the recovery of damages in favor of the plaintiff, against the defendant, in another action for a libel, and which formed one of a series of numbers published in the same paper, and which contained the same libellous words, as were charged in the declaration in this suit.

(*a*) The words, as stated in the declaration, were as follows : " Lord *Melville* has been disgraced by the *British* house of commons, (no mirror of purity) and, however reluctantly, has been driven from the bounties of the crown. Let me ask for what—for bribery and corruption ? No—for applying to his own use the money of the public ? No—for with this he has not been charged—his offence, and an offence it undoubtedly is, consists in conniving at Mr. *Trotter's* application of the public money to the advancement of his private ends. *Is the offence of his lordship, confessedly great, equal in mischievous example, in downright turpitude, in its demoralizing consequences, to the conniving of a secretary or treasurer of the state, or any higher official character, at the bribing of no inconsiderable portion of the legislature ?* I ask this question hypothetically, for I do not know, nor do I assert, that although many of the members of our legislature were unquestionably bribed, the secretary and treasurer of the state winked at the bribery—but this I affirm, and hold myself accountable to the gentleman and to the law for the affirmation—that before the bribery was unfolded and substantiated in the assembly, by incontrovertible testimony, the secretary and treasurer of the state, aided and abetted by frequent private consultations, by public vindications and otherwise, the persons who were bribed, and that after the bribery was so disclosed and established in that house, they succoured and encouraged the legislators who were guilty of the offence. Admitting, then, for the sake of argument, that the secretary and treasurer of the state did know, or had reason to believe, that the members of the legislature had been bribed to vote for the

was objected to by the defendant's counsel on the ground, that the *title* of the newspaper produced, was different from that described in the declaration, viz. " *The Republican Watch Tower.*" This objection was overruled by the chief justice, who decided that the defendant, by not pleading, had admitted, that he had published the libel as charged, and that it was unnecessary to produce any paper, and that the plaintiff's counsel might read the words from the record, or any paper which contained them. The plaintiff's counsel then read from the paper the libellous words, as set out in the declaration. On opening the ground of defence, the defendant's counsel stated that they should offer evidence of the impropriety of the plaintiff's political conduct, and the badness of his political character ; but the chief justice decided, that, circumstanced as the case then was before the jury, the political conduct of the plaintiff was not a proper subject of inquiry or comment. The defendant's counsel then offered in evidence, in mitigation of damages, a record containing an assessment of damages to 1400 dollars, in favour of the plaintiff, against the defendant for a libel published in the same paper on the 3d day of *July*, 1805,* and they offered to prove that the libellous words, charged in both declarations, were contained in a series of numbers published by the defendant in a public newspaper, entitled, " *Republican Watch Tower*," and all relating to the manner and the means employed, in procuring the incorporation of the *Merchants' Bank.* This testimony being objected to by the plaintiff's counsel, was rejected by the chief justice. The defendant's counsel then read to the jury, the remaining part of the paragraph, and insisted that the whole, taken together, did not amount to the charge alleged in the declaration.

In his charge to the jury, the chief justice observed, that the defendant, by not pleading, had admitted that he

ALBANY, Feb. 1808.

Tillotson v. Cheetham.

* See 2 *Johnson,* 63.

the incorporation of the Bank, would they appear to the eye of the community, to the eye of an uncorrupted legislature, to the eye of the law, less criminal than Lord *Melville* ? When the safety of the nation is at stake, suspicion is just ground for inquiry."

was the printer and publisher of the libel, as charged in the declaration, and the truth of the *innuendoes*, as alleged by the plaintiff; and that the defendant was estopped from calling the attention of the jury to any other part of the paragraph which contained the libel, to show a different meaning of the libellous words, from that set out by the plaintiff. He further remarked, that if the defendant was not precluded by his default, yet, in his opinion, the intent of the defendant to fix upon the plaintiff the charge, as alleged in the declaration, was obvious from the whole tenor of the publication. He further observed, that the charge contained in the libel, was calculated not only to injure the feelings of the plaintiff, but to destroy all confidence in him as a public officer; and, in his opinion, demanded from the jury exemplary damages, as well on account of the nature of the offence charged against the plaintiff, as for the protection of his character as a public officer; which he stated as a strong circumstance for the increase of damages; that he did not accede to the doctrine that the jury ought not to punish the defendant, in a civil suit, for the pernicious effect which a publication of this kind was calculated to produce in society. The jury assessed the damages at 800 dollars.

On an affidavit containing the above facts, at the last term, a motion was made to set aside the inquisition for irregularity.

*Foot* and *E. Williams* for the defendant. By a default, a substantial cause of action is not admitted, if no cause of action really existed. Some things are admitted, but the plaintiff must prove others. Thus, in trespass *de bonis asportatis*, on a judgment by default, or *non sum informatus*, the plaintiff is bound to prove, on the writ of inquiry, the value of the goods, though not the property.* The defendant admits no more than a right to nominal damages; and if the plaintiff means to get more, he must produce further proof to the jury.† Again, it was important that the paper containing the publication should be produced, in order to show a variance between it and the paper set

* *Cro. Jac.* 220.

† *3 Term,* 301.

forth in the declaration, as well as to explain the meaning of the words charged, by the subsequent words in the same paragraph. By not admitting the whole paragraph to be read, the defendant was prevented from showing, that he did not mean to charge the plaintiff with bribery or corruption. The truth of the *innuendoes* ought to have been determined by the jury ; and the defendant, by his default, was not precluded from showing the *innuendoes* to be incorrect. The intention of the writer, and the fair meaning of the *innuendoes*, are proper points for the jury to decide. If so, the inquisition ought to be set aside, for the misdirection of the judge.

In *Messin* v. *Massareene*,[*] which was an action of *assumpsit* on a foreign judgment, in which the defendant suffered a judgment to pass by default, the court would not allow a final judgment to be entered up, without executing a writ of inquiry ; and it was held that the defendant might go into the consideration of the original judgment, on which the action was brought. Again, it was competent to the defendant to go into evidence in mitigation of damages, and for that purpose to show a former recovery for the same cause of action. Though published on different days, yet they were all a connected *series* of numbers relating to the same subject, containing the same charge, and published in the same gazette. The plaintiff in this suit is certainly not entitled to the same damages, as if he had not already recovered a heavy sum for the same cause of action. The charge of the judge, also, was incorrect, in stating that the plaintiff was entitled to exemplary damages, on account of the injurious tendency of such publications to the community. In a private action, the party can recover only for the private wrong ; he has no concern with the public offence, for which the defendant must atone, on an indictment.

*Colden*, contra. 1. By suffering a judgment by default, the defendant admits the publication, or cause of action, to be, as set forth in the plaintiff's declaration ; and the

ALBANY,
Feb. 1808.

Tillotson
v.
Cheetham.

[*] 4 *Term*, 493.

ALBANY,
Feb. 1808.

Tillotson
v.
Cheetham.

† 3 *Term*, 301.
2 *Sellon*, 22.

only thing for the jury to inquire into, is the amount of damages. The defendant is in the same situation, as if he had confessed the action, or pleaded *non sum infor-matus*.† The case cited from *Croke*, goes no farther than that the plaintiff, must prove the *quantum* of damages ; the trespass, or cause of action, need not be proved. The charge of the judge was, therefore, correct, that the default admitted the publication of the libel, and the truth of the *innuendoes*.

2. The evidence of an assessment of damages in a former suit, for a similar libel, was properly rejected.—— Though relating to the same matter, and contained in a series of numbers, yet the numbers were published on different days, and each publication constituted a distinct libel, for which the plaintiff is entitled to a separate action.

3. There are many instances of private suits, where the mischievous tendency of, the acts for which they are brought, in relation to the public, is allowed to be taken into consideration by the jury, in the assessment of damages. Such are the cases of *seduction, adultery*, and others of a similar nature.

KENT, Ch. J. Several reasons are assigned, why the assessment of damages, in this case, ought to be set aside.

1. It is alleged, that the jury were restrained from examining the remaining parts of the paragraph, or the parts of the publication which preceded, and followed the libellous words selected. But this allegation does not appear to be supported. The affidavit, which is the ground of the motion, states, that the counsel for the defendant did read to the jury " the remaining part of the paragraph containing the libellous words," and that they drew their inferences " from the whole paragraph taken together." The jury had, then, before them, not only the libel, but the context, and were left to form their judgment of the damages " from the whole tenor of the publication." It is further stated, that the jury were charged, that the interlocutory judgment admitted the fact of the publica-

tion, and the truth of the *innuendoes*. Of the accuracy of this position I cannot entertain a doubt. It is a well-settled rule, that the interlocutory judgment admits the cause of action ; (1 *Tidd's Practice*, K. B. 523. 3 *Term*, 302.) and in a suit for a libel, those two facts are essential to establish the right of action. But it is added, that the jury were told, that the defendant was estopped from call-ing their attention to the other paragraphs, *to show a different meaning of the libellous words from that set up by the plaintiff.* Most undoubtedly, the other para-graphs could not be considered with this view, and for this purpose, for it would be setting up a complete jus-tification. If the defendant was to be permitted to show a different meaning to the words from that averred in the declaration, he would effectually destroy the right of re-covery. The *innuendoes* are essential averments, and the interlocutory judgment confesses every material averment. When the affidavit was first read, it struck me that this part of it conveyed the idea, that the jury were directed not to pay any attention to the remaining paragraphs, *even with a view to regulate the damages,* and it led me to think, that the counsel who drew the affidavit had misap-prehended the charge. But on examination of the affida-vit, I am satisfied, that it does not bear that meaning ; and that taken together, it substantially comports with my re-collection of the opinion delivered to the jury.

2. The defendant offered in evidence, in mitigation of damages, a record containing an assessment of damages in favour of the plaintiff against the defendant, for publishing a libel on the 3d day of *July*, 1805 ; and he offered to prove, that the libellous words, in both declarations, were con-tained in a series of numbers published by him, which related to the manner and the means employed in procur-ing the incorporation of the *Merchants' Bank.* This tes-timony was rejected, and on a reconsideration of the point, I cannot but be of opinion, that it was properly re-jected. As the causes of action were wholly distinct, (the one publication being on the 3d, and the other on the 17th

of *July*) the admission of the record would have been without precedent, in the law of evidence. Although both libels were contained in a series of publications relative to one subject, yet they were separate publications, circulated at different times, and many of them, probably, among different hands, and the jury who passed upon the first libel, could not have had the second before them. I cannot perceive on what principle the assessment in the one case, should regulate that in the other, whether the damages given be considered as a compensation to the plaintiff, or as a punishment on the defendant. On the ground of recompense for actual injury, the first recovery ought clearly to have no influence upon the second. The plaintiff is entitled to his strict compensation for every injury. A satisfaction for one *tort* is no satisfaction for another. This will not be denied. But the argument for the admission of the record of the prior recovery, proceeds upon the supposition, that a part of the damages are to be considered as monitory, and given for the sake of example ; but in this view of the question, the position taken by the defendant's counsel appears to me to be equally untenable. A subsequent jury have no means of analysing the damages contained in a former verdict, and of ascertaining the respective proportions given for recompense, and for punishment. They cannot investigate the merits of the former cause. They have not the testimony before them. The doctrine is not to be confined to suits for defamation. It would apply to every case of *tort ;* for juries, in all such cases, have a like discretion, on the subject of damages. The rule, to be just, must be mutual, and the plaintiff would have an equal right to show the former recovery, in order to enhance the damages, by exhibiting the malignant and irreclaimable disposition of a defendant. But no such practice has ever been admitted, because each case ought to be governed by its peculiar circumstances ; and it would be exciting prejudices against the party, foreign from the

true merits of the cause. The principle would, as I apprehend, be mischievous in its operation. It would invite a repetition of injury, by the hopes of comparative impunity, for the second offence; yet the repetition of an offence is evidence of deeper depravity, and calls for more exemplary punishment. Miserable would be the condition of civil society, if those who had once broken the law, by attacking the peace, or wounding the character of their neighbours, could thereby acquire a valid plea for a future relaxation of its wholesome severities. We cannot, at present, foresee the extent of this doctrine. It would seem to require the admission of the record of a former recovery, in favour of a different plaintiff, for a portion of the damages in that case may equally have been given for the sake of correction and example. Suppose the rule to be once established, how could it be known that the verdict in the former cause had not been reduced down to damages for actual injury, by the evidence of a still prior recovery? Would the plaintiff be permitted to show that such evidence had been given on the former trial? Is one recovery to be a standing shield to a defendant, against all subsequent suits, where positive damages cannot be computed, or how long will it be before the efficacy of the first recovery will become exhausted, so as to leave the jury to their usual discretion? It is far more easy for me to anticipate, than it would be to surmount, the embarrassments which might arise from the application of the doctrine.

I can readily admit, that there may be cases in which the two offences follow so near to each other, in point of time, that exemplary damages in the first case might answer all the beneficial ends, intended by this species of animadversion. But the possibility of undue or unnecessary damages in a subsequent suit, will not affect an established rule. The rules of evidence are stable and uniform principles, which cannot bend to the hardships of a parti-

cular case, or yield to the discretion of courts. The record of a recovery for a like *tort*, must, as a general rule, be admitted in mitigation of damages, or it must, as a general rule, be rejected. To admit it in particular cases only, and that too with limitations, would destroy the simplicity and certainty of the rule, and render the law of evidence vague and uncertain.

3. A third ground of the motion is, that the public character of the plaintiff, as an officer of government, and the evil example of libels, were stated by the judge to the jury, as considerations with them, for increasing the damages. And, surely, this is the true and salutary doctrine. The actual pecuniary damages, in actions for defamation, as well as in other actions for *torts*, can rarely be computed, and are never the sole rule of assessment. " In cases of criminal conversation, battery, imprisonment, slander, &c. (to use the words of Lord *Camden*, in 2 *Wils.* 206.) the state, degree, quality, trade or profession of the party injured, as well as of the party who did the injury, must be, and generally are considered by the jury, in giving damages." And, in the case to which these observations were applied, he admitted, that the mere personal injury to the plaintiff was very small, but said that the jury had done right in giving exemplary damages, as it was a case which concerned the liberty of the subject. In another case, which came before the court of *C. B.* for debauching the plaintiff's daughter, (3 *Wils.* 18.) chief justice *Wilmot* observed, that actions of that sort were brought for example's sake, and that, although the loss to the plaintiff might not really amount to the value of twenty shillings, yet that the jury had done right in giving liberal damages. Again, in the case of *Pritchard* v. *Papillon*, (*Harg. State Trials*, vol. 3. 1071.) which was an action for maliciously causing the plaintiff, as Lord Mayor of *London*, to be imprisoned for a few hours, the chief justice charged the jury, that though it was no easy matter to

ascertain particular damages in such a case, yet that the malicious design of the party was to govern them, and that the government of the city, and the honour of the magistracy, were concerned, and put a weight upon their inquiry into the damages. But it cannot be requisite to multiply instances in which the doctrine, contained in this part of the charge, has received the sanction of the *English* and of the *American* courts of justice. It is too well settled in practice, and is too valuable in principle, to be called in question. As these were the only grounds of the motion which seem to have been relied on, or were material to examine, I am of opinion, that the motion must be denied.

ALBANY, Feb. 1808.

Tillotson v. Cheetham.

THOMPSON, J. and VAN NESS, J. declared themselves to be of the same opinion.

SPENCER, J. A judgment by default is an admission of the plaintiff's right of action, and where the damages are liquidated by the convention of the parties, witnessed by written documents, set forth in the plaintiff's declaration, the jury are bound to give the damages ascertained by the parties; there is no necessity of proving the note or writing thus set forth, though they must be adduced to the jury, that they may see whether indorsements have been made. In actions of a vindictive nature, such as the present, a judgment by default deprives the defendant of no other right than that of gainsaying the plaintiff's title to nominal damages, and of consequence, the printing and publishing the libel is admitted. With respect to real damages, the defendant has the same right to adduce evidence in mitigation of those damages, as he would have had, upon a plea of not guilty, after the publication of the libel, and the *innuendoes* had been proved. These are elementary principles, sanctioned as well by daily practice, as by adjudged cases.

It then becomes a question, whether the evidence of a record of a recovery by the plaintiff against the defendant, was properly excluded. It was offered to be shown, in

mitigation of damages, that the plaintiff had recovered against the defendant, 1,400 dollars, for publishing in the same newspaper, containing the libel which is the foundation of the present suit, another libel, the *innuendoes* stated in both of which allege, that the plaintiff and others, had been guilty of bribery and corruption, in obtaining the incorporation of the *Merchants' Bank*. It was also offered to be proved, that the libellous words contained in both declarations, were contained in a series of numbers, published by the defendant, all of them relating to the manner and means employed in procuring the incorporation of the *Merchants' Bank;* that the paper containing the libel, for publishing which the said 1,400 dollars had been recovered, was published on the 3d *July*, 1805, and the paper containing the libel, for which this suit is brought, was published on the 17th of the same month. It no where appears, that a suit had been instituted for the publication of the first libel, before the second was published.

The defendant could not have pleaded the recovery in the first suit in bar to the second, because they were, technically, distinct offences, and the recovery in the former suit could be noticed in no other manner, than as mitigating the damages in the second suit. It cannot be inferred, from the affidavit before us, that special damages have been alleged in the declaration in either suit. Hence it results, that the plaintiff having already recovered 1,400 dollars, for a libel of the same nature and tendency, as the one which is the basis of this suit, without the allegation of any special damage in either case, would, on the second trial, recover as though the second publication was, in reality, a new, distinct, and uncompensated offence. In vindictive actions, such as for libels, defamation, assault and battery, false imprisonment, and a variety of others, it is always given in charge to the jury, that they are to inflict damages for example's sake, and by way of punishing the defendant. In the present case, the Chief Justice, in charging the jury, inculcated the doctrine of

giving exemplary damages, as a protection to public officers. It cannot, then, be denied, that by excluding the record of the former recovery, the defendant has again been assessed to the amount of 800 dollars, as though the present plaintiff had not recovered already for precisely the same kind of injury, and, as though the defendant had not been exemplarily punished, for charging the plaintiff with conniving at the bribery of the legislature. It is said, that to admit this evidence would be innovating on the rules of evidence, and introductory of a new rule. No authority has been mentioned in support of this position, nor do I know of any rules of evidence, which would exclude the testimony offered. New cases require the establishment of new rules, by the application of old principles ; those principles warrant the giving facts and circumstances in evidence, which go to regulate the verdict, so as to arrive at a just result. It is, in my conception, evidently unjust, that a fact should be suppressed and withholden from the jury, which would and ought to lessen the damages ; for what honest man would give to a plaintiff, who had already recovered a large sum upon the same charge, as much in a second suit, when his character had been rescued from the imputations thrown on it, and when the defendant had been punished for example's sake. I grant, that had it appeared, that this libel was published after the defendant had been prosecuted for the publication of the 3d *July*, 1805, he would have deserved another punishment for example's sake ; but this did not appear. It is easy to suppose cases, where the injustice of refusing such kind of evidence as that now offered, would be universally felt and acknowledged ; as for instance, the sale of libellous publications by a bookseller. Every sale being a new publication, would it not meet the reprobation of mankind, to hold him alike obnoxious to damages, for each publication, or to hold, that the plaintiff had the same title to damages in the hundredth suit, as in the first ? In every

light in which I can view the subject, I am struck with
the abstract justice of admitting the evidence offered, and
I am unconscious that any part of the law of evidence is
violated thereby. For refusing this evidence, in my opi-
nion, the inquisition should be set aside, and a writ of in-
quiry *de novo* issue. I cannot yield my assent to the po-
sition of the Chief Justice, on the inquiry, that the de-
fendant's counsel were estopped from calling the attention
of the jury to any other part of the context, to show a
different meaning of the libellous words, from that alleged
by the plaintiff, having already said, that though the
plaintiff was, in consequence of the default, entitled to
nominal damages, yet, as respects real damages, the de-
fendant was at liberty to urge to the jury, that the *innuen-
does* were not warranted by the context, and that, from
the libel collectively, he did not intend to attribute to the
plaintiff any agency in bribing the legislature. I dissent
from the principle laid down by the Chief Justice, with-
out giving an opinion, whether the *innuendoes* were or
were not warranted by the context.

Rule refused.