Otsego Special Term, December, 1848.   *Pratt,* Justice.

## Bailey *vs.* Dean.

A bill of discovery in aid of an action at law must disclose a case which would entitle the plaintiff to recover in such action. And the plaintiff must state and set out so much of the pleadings as will enable the court of equity to see that the facts alleged in the bill, and of which he claims a discovery, are material.

To support an action for slander of title, special damages must be alleged, and that too, circumstantially. An allegation of loss, in general terms, is not sufficient.

To sustain an action for slander of title, or for malicious prosecution, there must be a want of probable cause. If what the defendant says, or does, is in pursuance of a claim of title, he is not responsible.

No proceeding according to the regular course of justice will make a complaint, or other act, amount to a libel, for which an action can be maintained.

A distress warrant is a remedy given to the party by law, for the purpose of enforcing a legal right, and comes within the reason of this rule.

A bill of discovery, in aid of a suit at law, cannot be sustained if the evidence sought for, when obtained, would be inadmissible upon the trial of the action at law.

It is a general rule that a defendant is not bound to discover any thing which might render him liable to a penalty or forfeiture, or to any thing in the nature of a penalty or forfeiture. *Per* Pratt, J.

An action for slander, is in the nature of a penal action, and comes within this general rule, *it seems. Per* Pratt, J.

In Equity. This was a bill for a discovery in aid of the prosecution of a suit at law commenced by Bailey against Dean for slander of title, libels, malicious prosecution, &c. The bill set forth a great number of usurious transactions between Bailey and Dean, extending over a period of nearly twenty years. It alleged that on the 1st of December, 1836, Bailey applied to Dean for a further loan of $160 for one year; that Dean claimed that there was $555 due to him from Bailey, upon two judgments which he had recovered against Bailey; though Bailey denied that there was any thing due, in fact. That Dean finally proposed to loan Bailey $160 if he and his brother Charles Bailey would execute a bond and a mortgage on the farm of the former for $1080, payable in ten years, with interest, to consist of the $555, two colts at $150, cash $160,

Bailey *v*. Dean.

and $215 extra interest and usury. That the Baileys at first refused to accept the loan on those terms, but they at last consented, and started for Cooperstown to execute the bond and mortgage. That while they were on their way Dean stated to Bailey that he did not take a mortgage in the usual way, but that it was his custom to take a deed, absolute on its face, and give back a lease reserving an annual rent, equal to the interest, with a defeasance, &c. ; because he would not have to pay taxes on leases. And Dean agreed that if they would give a deed it should be the same as a mortgage, on their paying the $1080 and interest, and if that sum was not due, that he would deduct or refund the overplus, &c. That on these terms a deed and lease were executed by the parties. That Bailey did not know that there was nothing due upon the judgments, at the time of executing the deed, and did not ascertain that fact until he employed counsel in 1846. The plaintiff alleged that the deed was fraudulent, usurious, and void, and obtained by Dean falsely, fraudulently, wilfully, &c. That when the deed and lease were executed, it was so late that the parties agreed to postpone the execution of the defeasance until some other day ; Dean agreeing to execute it on request, and that all the writings should be considered as one instrument. That Charles Bailey was named in the lease as lessee, and the lease was afterwards assigned by him to the plaintiff John Bailey, with Dean's consent. The defeasance, it appeared from the bill, was subsequently executed. The bill alleged that on the 18th of July, 1844, Dean fraudulently, maliciously, oppressively and extortionately issued a distress warrant on the said mortgage to collect the interest on the said debt of $1080, when in truth it was not a deed and lease but a mortgage ; that such mortgage, deed and lease, and debt were fraudulent, usurious and void, and the Baileys were not indebted to Dean, for rent or otherwise. That the distress warrant was also fraudulent and void ; that it was issued against the property of John Bailey (although the name of Charles Bailey was, by mistake or fraud, inserted in said warrant,) and was levied on John Bailey's property ; which was

sold for $162,93.  That by means of said warrant and sale, and by means of Dean's claiming to be the absolute owner of the said farm, and claiming a sum of $2000 as his due on said judgments and lease, John Bailey, the plaintiff, was ruined in character and property, and lost his farm and property by means of Dean's libels and slander of title to said farm, and of his credit, and by means of said distress warrant; and that the plaintiff had sustained damages to the amount of several thousand dollars, as stated in the said suit at law against Dean, and for which injuries and damages such suit at law was brought.  The bill alleged that there was a mutual account between the plaintiff and Dean, extending back to 1832, which had never been settled, and which Dean fraudulently refused to settle, claiming a balance of $2000 and interest due to him. And that he has claimed to be the absolute owner of the premises, in fee, since January, 1844.  That all these fraudulent and usurious transactions occurred within Dean's own personal knowledge; and that for his said acts of libel, slander, &c. the plaintiff had commenced his suit at law; and reference was made to the declaration on file therein; said suit being at issue.  That Dean had put in a plea claiming to be the owner of the premises, by virtue of the deed executed by the plaintiff, and that said deed, lease, and defeasance were not a mortgage. That the plaintiff will be under the necessity of proving that they were all one instrument, and were given to secure said debt of $1080.  That he had applied to Dean for a voluntary discovery, &c. but he fraudulently refused to make the same. That those facts are necessary to aid said suit at law.  And the bill prayed for an answer and discovery on oath, &c.

To this bill the defendant demurred.

*L. C. Saxton,* for the plaintiff.

*Lathrop & Burditt,* for the defendant.

PRATT, J.  If the plaintiff has made a case by his bill which would have entitled him to a discovery of the usury, by the de-

Bailey *v.* Dean.

fendant, previous to the passage of the act allowing a party in a suit to call his antagonist as a witness, he is not, by force of that law, deprived of the right to such discovery. The party called as a witness under that act has the same privileges as any other suitor; and therefore would not be compelled to disclose any fact which would tend to criminate him, or subject him to an indictment. The defendant in this case, if called as a witness in the suit at law, would not be bound to disclose the fact that he had taken usury. Upon this bill of discovery, however, he is compelled by the statute of 1837 to make such disclosure, if the fact exists.

But I think this bill cannot be sustained upon the merits. A bill of discovery in aid of an action at law must disclose a case which would entitle the plaintiff to recover in such action. And the plaintiff must state and set out so much of the pleadings as will enable this court to see that the facts alleged in the bill, and of which he claims a discovery, are material. (*Story's Eq. Pl.* 319, 324, 558, 559. *Mitf. Pl.* 187. *Hare on Disc.* 43. 3 *John. Ch.* 47. 9 *Paige,* 622.)

This bill entirely fails in that respect. 1st. It does not show with sufficient clearness the nature of the action. The declaration in the suit at law is not attached to the bill, and forms no part of it; and for the purposes of the decision of the case on the demurrer it cannot be taken into consideration. The bill itself merely mentions the fact of a suit for certain libels, slander, malicious prosecution, and wrongs having been brought, but it does not specify the particular wrongs for which it is brought. It is altogether too uncertain. (*Story's Eq.* §§ 317, 318.) 2dly. It does not set forth a sufficient cause of action, were there no objection to the form. The only act set forth in the bill which might tend to lay the foundation of an action for slander of title or malicious prosecution against the defendant, was the issuing of the distress warrant on the 18th of July, 1844. To support an action for slander of title special damages must be alleged, and that too circumstantially. (*Starkie on Slander,* 158, 159, 323.) This bill discloses no treaty for the sale of the premises, broken off by means of the slander, nor any circum-

Bailey *v.* Dean.

stances from which this court may infer a loss; but it merely alleges a loss in general terms, which is not sufficient. (*Id. ib.*) Again; to sustain an action for slander of title, or for malicious prosecution, there must be a want of probable cause. In that respect I think they should be put very nearly upon the same ground. If what the defendant says or does is in pursuance ' of a claim of title, he is not responsible. It would be a monstrous doctrine to assert that the party who brings his action of ejectment claiming title to the land may be sued in an action of slander if it should turn out that he was mistaken. In such cases malice, which is the gist of the action, is conclusively disproved. Hence it was anciently held that an action would not lie against a person for claiming title in himself although he knew the claim was false. (*Starkie,* 202. 4 *Coke,* 18.) But the later cases have somewhat modified that doctrine.

But if there be some ground for the claim, the cases all agree that the action cannot be sustained provided the assertion is in pursuance of such claim. (*Starkie on Slander,* 202, 203, 4, 5, 46. *Smith* v. *Spooner.* 3 *Taunt.* 248. 2 *Greenl. Ev.* § 428. 4 *Burr.* 2422. 4 *Co.* 18.) In this case the bill shows that the defendant held an absolute deed of the premises; that the plaintiff occupied the premises by virtue of a lease from the defendant to Charles Bailey, reserving rent, and stipulating for enforcing the payment thereof by distress. It also alleges that by virtue of said deed and lease the defendant claimed title and a right to distrain; that under such circumstances the defendant issued a distress warrant; and for that the action of slander of title and malicious prosecution is brought against him. To sustain this action the defendant is required to discover his dealings with the plaintiff for a period a little less than twenty years, in order, if possible, to overthrow the apparent title. The bare statement of the case would be sufficient. The plaintiff, upon the trial, if he stated no more than is stated in this bill, would be nonsuited, upon his opening. But there is another view of this case which is decisive of it, so far as the action at law is based upon the idea of slander of title. The only allegation in regard to that matter set forth in the bill is the distress warrant. It

is well settled that no proceeding according to the regular course of justice will make a complaint or other proceeding amount to a libel, for which an action can be maintained. (*Starkie*, 186.  1 *Saund.* 131.)  A distress warrant, although not issued for the purpose of instituting a suit, is a proceeding given to the party by law, for the purpose of enforcing a legal right, and comes directly within the reason of the rule.  It is now regulated by statute, and can only be served by a public officer.  In such cases, if it issued without right, the law gives ample redress without subjecting a party to the pains and penalties of an action of slander.  3dly.  The evidence, when obtained, would be inadmissible upon the trial of the action at law; and for that reason the demurrer should be allowed. (*Story's Eq. Pl.* 558, 9, 565, 319.  *Mitf.* 187.  *Hare on Disc.* 43.  1 *Bligh's Rep. N. S.* 96, 120.  9 *Paige,* 622, 580.)

The bill shows that the defendant, as long ago as 1836, received from the plaintiff an absolute conveyance of the premises, and at the same time executed a lease in perpetuity to Charles Bailey, reserving to himself the yearly rent of $75,60, with the privilege, in default of payment, of distraining for the same.  Thus stands the paper title, except that this lease has been assigned, by consent of the defendant, to the plaintiff.

It is well settled that usury in the consideration does not invalidate an absolute deed or conveyance of land.  (2 *Hill,* 524.  1 *John. Cas.* 158.  7 *Paige,* 615.)  This seemed to be conceded by the plaintiff's counsel ; and hence, in the bill, he insists that there was, at the time of the execution of the deed and lease, some parol agreement or understanding by which the deed and lease were given merely as a mortgage for securing the payment of some $1080.  He insists that by proving a parol defeasance he can change the deed into a mortgage, and then attack and demolish it for the usury which it contains, and thus leave the plaintiff with a title so clear that the man holding the deed which he terms a mortgage may be mulcted in damages in an action for slander for disputing it.  However the rule may be in equity (and it seems to be a mooted question there) it has been settled since the case of *Webb* v. *Rice,* (6 *Hill,*

219,) that in an action at law a parol defeasance cannot be shown for the purpose of turning a conveyance of land absolute upon its face into a mortgage. '

It was insisted upon the argument, that this case being in a court of equity, the rule would not apply. But the plaintiff requires the discovery, not to be used in a court of equity, but in a court of law. Upon the trial of the action at law the evidence will not have any more efficacy from the fact that it has been fished up through the aid and assistance of the equitable powers of the court, than if the proof was offered by a witness upon the stand. We cannot but see that if all the facts stated in the bill were admitted as true they would not avail the plaintiff in the trial of his action, or enable him to avoid the justification which the defendant has spread upon the record. Upon these points a court of equity has a right to pass judgment where a discovery is sought. (*Story's Eq. Pl.* § 558.) It was claimed that the contract executed some years subsequent to the deed should operate as a defeasance. But that is a simple contract for the sale of the defendant's interest, and does not purport to relate back to, or affect, the execution of the deed.

There are other minor objections to this bill which it is not necessary to notice. Those above stated are sufficient.

I do not believe, notwithstanding what was said by the chancellor in *March* v. *Davis*, (9 *Paige*, 580,) that a party should be compelled to disclose facts to enable a plaintiff to sustain an action of slander. The general rule is that a defendant is not bound to discover any thing which might render him liable to a penalty or forfeiture, or any thing in the nature of a penalty or forfeiture. It has often been held that actions of slander were of the nature of penal actions. Hence, on motions for new trials the same rules have been held to be applicable to both. (3 *John.* 180. 9 *Id.* 36. 2 *Burr.* 66. 4 *Cow.* 37. *Salk.* 644.) The jury, in giving their verdict, are not confined to the actual damage sustained, but may take into consideration the motives of the defendant, and the degree of malice with which he was actuated, and regulate their verdict with a view to its effect upon the community and as a punish-

Bailey *v.* Dean.

ment of the defendant. So far as these considerations affect the verdict, it loses its compensatory character and becomes strictly penal. (3 *John.* 56. 3 *Wils.* 18. 2 *Id.* 206,) And when the defendant may be indicted for the same offence, the fact that he has been indicted and has satisfied the penalty of the law cannot be shown for the purpose of avoiding or mitigating the penal character of the verdict in the civil suit; although the criminal court may stay judgment, or regulate the penalty to be imposed, by considerations growing out of the civil suit. (6 *Hill*, 468.) The action, therefore, is in the nature of a penal action, and comes within the general rule.

Nor does it seem necessary that a discovery for the purpose of procuring evidence to sustain an action of slander should be allowed. From the nature of the case the right to a discovery could not be mutual. If the slander consists in accusing a person of crime, the plaintiff, if called upon to make discovery of the truth of the charge, to enable the opposite party to defend the suit, would be allowed to decline answering, on the ground that it would criminate himself.

Again; the very principle on which the suit is based precludes the idea of any necessity for a discovery. It is founded on the idea of publication—of having spread abroad the slanderous charge. If the defendant has not spread abroad the report so that there is sufficient evidence of the publication without calling upon the defendant himself, the plaintiff's character, as a general rule, will not suffer materially. But this point it is not necessary to decide. The demurrer must be allowed.