SAMUEL SAMUELS, RESPONDENT, v. THE EVENING MAIL ASSOCIATION, APPELLANT.

*Libel — actual malice — Exemplary damages — liability of a corporation for.*

This action was brought to recover damages for a libel concerning the plaintiff published in a newspaper owned and managed by the defendant. It appeared upon the trial that the report was received from an established news agency, that it was published in but one edition of the paper and suppressed in the subsequent ones; that some of the copies of the paper unsold when it was discovered were not destroyed, and one copy was sold; and that on the following day a retraction was published. There was no proof of actual malice on the part of the corporation or any of its officers. *Held,* that the evidence would not authorize the jury to find that there was *actual* malice on the part of the defendant, and that a verdict awarding *exemplary* damages should be set aside. (DAVIS, P. J., dissenting.)

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to recover damages for the publication in a newspaper, owned and published by the defendant, of certain false and defamatory matter concerning the plaintiff.

The answer set up that the persons employed by the defendant to have charge of editing or publishing its newspaper, were carefully selected and proper and competent persons; that the article was published through mistake, without authority from the defendant, and without the defendant's permission or knowledge. The answer denied that at the time of the publication malice existed on the part of the defendant or any one connected with its newspaper, and denied that the plaintiff has been injured by the publication to any pecuniary extent, in the respects in which damages are claimed.

On the trial it was shown that the libelous article was furnished to the defendant by an established news association; that the article appeared only in the last edition of the Evening Mail, which was printed and distributed before knowledge of the libel reached the editor of the newspaper or the treasurer and manager of the corporation; such matter was usually printed in the next days paper, but in this case was suppressed; that some copies which were left

over on the premises were not destroyed by the treasurer upon discovery of the libel, and one of them at least was afterward sold.

A retraction of the libel was published by the defendant the day after it appeared.

No proof of special damages to the plaintiff on account of the libel was offered.

The judge refused to charge the jury that the case was not one for exemplary damages, but did charge them that if they believed the libel was maliciously published the plaintiff would be entitled to, and they would have the right to award exemplary damages, to which the defendant's counsel excepted.

The jury returned a verdict for the plaintiff for the sum of $2,000.

The case has already been before the General Term, where a new trial was granted on the ground that certain evidence offered by the defendant had been improperly rejected. The case is reported in 13 S. C. R. N. Y. (6 Hun), 5.

*Henry H. Anderson* and *Howard Mansfield*, for the appellant. Before the defendant can be held liable for actual malice, some corporate act in ordering or authorizing the publication in question must be shown. (*Phila., Wilm. and Balt. R. R.* v. *Quigley*, 21 How. [U. S.], 213; *Maynard* v. *Ins. Co.*, 34 Cal., 57; *Ackerson* v. *Erie R. R.*, 3 Vroom, 254.) It is not pretended that there were instructions to publish the libel or persist in the publication. That there was no ratification is shown by the retraction of the libel at the first opportunity. (*Edwards* v. *Railway Co.*, L. R., 5 C. B., 445; *Allen* v. *Railway Co.*, L. R., 6 Q. B., 72; *Ackerson* v. *Erie R. R.*, 3 Vroom, 253.) The defendant was entitled to have the jury instructed, that the case was not one for exemplary damages. It should not be held to respond in punitive damages for the unauthorized act of an agent, for which, if done with malice, the agent himself could be punished. (*Cleghorn* v. *N. Y. C. and H. R. R. R.*, 56 N. Y., 44; *Hogan* v. *Prov. and W. R. R.*, 3 R. I., 88; *Mil. and Miss. R. R.* v. *Finney*, 10 Wis., 388; *Turner* v. *N. B. and M. R. R.*, 34 Cal., 594; *Yates* v. *Smith*, 40 id., 657; *Daily Post Co.* v. *McArthur*, 16 Mich., 447.)

*Robert Sewell*, for the respondent. Corporations are liable in libel cases for the acts of their agents, and the malice of the agent

makes a liability for the corporation. If they enter into the business of publishing newspapers, they are liable for the acts of their agents as any natural person would be. (*Phila. R. R.* v. *Quigley,* 21 How. [U. S.], 202; Const. of N. Y., § 8; *Huff* v. *Bennett,* 4 Sandf., 120; *Ranger* v. *G. W. R. R. Co.,* 5 H. L. Cas., 72, 87; *Dunn* v. *Hall,* 1 Carter [Ind.], 345; *Andres* v. *Wells,* 7 Johns., 260; 2 Kyd on Corp., 474; *Lee* v. *Sandy Hill,* 40 N. Y., 448; *Farmers' Bk.* v. *Butchers' Bk.,* 16 N. Y., 133; *Whitfield* v. *S. E. R. R.,* 1 Ell., B. & E., 115; *First Ch.* v. *Sch. and Troy Co.,* 5 Barb., 80; *Aldrich* v. *Press Co.,* 9 Minn., 133; *Alex.* v. *N. East R. R. Co.,* 34 Law J. R. [N. S.], 152; *Jefferson R. R.* v. *Rogers,* 28 Ind., 1; *Rix* v. *City of London,* 8 How. S. T., 1039; *Edwards* v. *Union Bk.,* 1 Fla., 136; *Whitman* v. *R. R. Co.,* 2 Har. [Del.], 514; *Whitfield* v. *S. E. Co.,* 1 Ell., B. & E., 115; *Caldwell* v. *N. J. Co.,* 47 N. Y., 283; *Regina* v. *G. N. Co.,* 9 Q. B., 315.) A corporation is just as liable for the negligence of its agents as it is for their intentional wrong doing. The law implies damage from the publication of a false statement amounting to libel. (*Tripp* v. *Thomas,* 3 B. & C., 427; Townsend on Libel, § 289.)

Brady, J.:

It has been truly said that slander in writing has, at all times, and with good reason, been punished in a more exemplary manner than slanderous words, for, as it has a greater tendency to provoke men to breaches of the peace, quarrels and murders, it is of much more dangerous consequence · to society. Words which are frequently the effect of a sudden gust of passion may soon be buried in oblivion, but slander which is committed to writing, besides that the author is actuated by more deliberate malice, is, for the most part, so lasting as to be scarcely ever forgiven (6 Bac. Ab., 202; *McClurg* v. *Ross,* 5 Binn., 219); and hence the rule that malice is presumed from the falsity of the statement made; and hence, also, the doctrine pronounced in early cases that, in actions for libel, it is always given in charge to the jury that they are to inflict damages for example sake, and by way of punishing the defendant. (Per Spencer, J., in *Tillotson* v. *Cheetham,* 3 Johns., 56.) Chief Justice Kent, in the same case, said that the actual pecuniary damages in actions for defamation, as well as in other actions for

torts, could rarely be computed, and were never the sole rule of assessment. That action was for a libel, and the judge had charged the jury that it was such as, in his opinion, demanded from them exemplary damages; and, further, that he did not accede to the doctrine that the jury ought not to punish the defendant in a civil suit, for the pernicious effect which a publication of that kind was calculated to produce in society. The charge was sustained, and the judgment affirmed. That case was approved in *Taylor* v. *Church* (8 N. Y., 452), which was also an action for libel, in all respects, but its doctrine somewhat restricted by the statement of the principle to be that in actions for injuries to the person, committed under the influence of actual malice, or with the intention to injure the plaintiff, the jury, in their discretion, might give damages beyond the actual injury sustained, for the sake of the example — damages not only to recompense the sufferer, but to punish the offender. The earlier rule apparent from the case of *Tillotson* v. *Cheetham* (*supra*), and decisions cited, and which appears to have been sanctioned in *Hunt* v. *Bennett* (19 N. Y., 173), seems to have been that punitive damages would be authorized not only where there was actual malice, but where the libel was atrocious in character, or pernicious in its effects, and hence it is said herein that it was restricted by the case of *Taylor* v. *Church* (*supra*). The right to allow exemplary damages in actions of this character was again affirmed in *Caldwell* v. *New Jersey Steamboat Company* (47 N. Y., 282), and it was there declared that corporations were not exempt from the infliction of punitive damages in a proper case. " In any case where exemplary damages may be recoverable against the servant, they should be allowed against the master, if it appears that he had reasonable notice of the negligent habits of the servant, or if he left the servant without control or supervision of the work." The case of *Cleghorn* v. *New York Central and Hudson River Railroad Company* (56 N. Y., 48), reasserts this view.

It is not denied in this case that the defendants are liable for the actual injury caused by the publication of the libel, but they insist that punitive damages should not be awarded against them unless there was some expression of the corporate will which could proceed only from the corporation itself, from its board of directors,

or other governing board, and not from its agents or officers acting without special directions. If this doctrine be established, it must be subversive of the principle "*facit per alium facit per se.*" The public should not be exposed to gross injuries arising from unauthorized publications in a paper, the control of which is given to persons in the employment of the owners or proprietors, and over whom the people have no supervisory or other power. If, however, the immunity is to be enjoyed, it should not be accorded in cases where the agent is left without control or supervision of the work.

This case reveals no supervisory or other control over the managers of the paper as to its contents or distribution. If there was any such element existing, the burden of proving it rested upon the defendants, and not upon the plaintiff. The most liberal rule, therefore, that can be given then in a case like this is, that the evidence shall warrant the submission to the jury of the question of actual malice in the publication of the libel, a subject open to review. (*Caldwell* v. *New Jersey Steamboat Co., supra.*) The learned justice charged the jury that if they believed the article was maliciously published, that there was a willful intent on the part of the defendants to injure the character of the plaintiff, he would be entitled to exemplary damages — damages that would serve as an example for such an offense. A careful examination of the case fails to disclose any evidence of such an intent to injure the plaintiff's reputation. If the character of the publication alone determined the right to exemplary damages, it will not be questioned that they should have been awarded, but such is not now the law. There must be proof of actual malice, that is, an intention to do harm, which could not be inferred alone from a desire to communicate information of striking, thrilling, startling or important events, which is characteristic of journalism, and which seems to provoke a rivalry as to who shall be first in the field with the intelligence. It is a very creditable ambition when it is not abused; and that wrong may be done unintentionally must be apparent from the hasty manner in which news must be gathered for each day's publication, and the reliance placed upon information springing from apparently reliable sources. The publishers are obliged to take the risk, nevertheless, when the matter relates

to character, and must, at least, respond in damages, when in error, to the amount of the injury sustained, and this rule is quite well understood and appreciated. In this case, the news of the event recorded came in the usual way, but was published without the editor's knowledge. When its publication was discovered by him, he caused it to be omitted from subsequent editions of the paper, and voluntarily made a retraction in the next day's issue. These facts do not justify the conclusion of actual malice. There is no proof of prejudice against the plaintiff; no proof of any expressed or entertained intention to wound his feelings or hurt his fame, reputation or good name, but, at best, a hasty, inconsiderate and improper publication, false and defamatory in its details, which the editor at once appreciated and sought to remedy. It is true that some copies of the issue containing the article were left after the discovery of the publication by the editor and treasurer, and that they were sold, but this is not sufficient to overcome the facts mentioned, which seem to destroy the assumed presence of an intention to do wrong, or, in the language of the judge, " of a willful intent, on the part of the defendants, to injure the character and reputation of the plaintiff." Applying the rule, therefore, to this case, that actual malice is necessary to warrant exemplary damages, the refusal to charge that the defendants, upon the evidence, were not liable for actual malice was erroneous, and a new trial must be ordered.

It is not necessary to deprecate in this opinion the publication of libelous articles in newspapers, especially of influence and power. No right-minded citizen can do otherwise than deplore the invasion of private character, and we cannot but think that journalists are not insensible of this sentiment. The courts will not fail to enforce the obligation resting upon all persons to observe and practice silence, when nothing can be truly and justifiably said to the injury of another, but the remedy must be applied according to the rules established for the administration of justice in this respect.

New trial ordered, with costs to abide the event.

Daniels, J. :

The manner in which the libelous article was received and published, its omission from the paper when discovered by the editorial

agent of the defendant, and the retraction afterwards published, were sufficient to show that the publication was not the result of actual malice or ill will towards the plaintiff; for that reason, the case was not a proper one for vindictive or exemplary damages. I therefore concur in the conclusion maintained by Mr. Justice BRADY.

DAVIS, P. J. (dissenting):

The corporation that owned and published " The Evening Mail," must be presumed to have clothed its agents with full power to originate, select or "*appropriate*" and publish whatever matter they should deem best for the general, and especially for the pecuniary interests of that newspaper. In these regards the management of the newspaper was wholly committed to their discretion.

The falsity of the libel was sufficient evidence of malice; and such malice is imputable to the corporation, because the publication was, in law, its own act, performed by its servants in the business it was created to carry on; and not by any willful departure from such business for the private and individual purposes of the servants.

The libel being false, the malice imputable from the act of publication is a part of the *res gestæ* from which the action arises. Nearly all the principal newspapers of the day are carried on by corporate and not by individual enterprise; and I think the law does not recognize any difference of responsibility between such ownership and that of individuals. Such corporations are capable of legal malice, and it should be imputed to them by the law whenever it would be to individual ownership.

The plaintiff in an action of libel gives evidence of malice whenever he proves the falsity of the libel. It becomes, then, a question for the jury whether the malice is of such a character as to call for exemplary or punitive damages; and that question is not to be taken away from the jury because the defendant gives evidence which tends to show that there was, in fact, no actual malice. When he gives no such evidence it is the duty of the court to say to the jury that, upon proof of the falsity of the libel, the plaintiff is entitled to exemplary damages in their discretion. (*Tillotson* v. *Cheetham*, 3 Johns., 56; and see opinion of

Kent, Ch. J., in same case; *Taylor* v. *Church*, 8 N. Y., 452, where the rule of *Tillotson* v. *Cheetham* is approved; *Hunt* v. *Bennett*, 19 N. Y., 173.) But where he gives evidence tending to prove the absence of actual malice, then it is the duty of the judge to submit to the jury the question, as one of fact, whether such malice existed in the publication. This is what the learned judge did on the trial of this case; and I think it is a mistake to say that there was no evidence calling for such a charge.

The railroad accident cases, cited by my brother Brady, seem to me to have no bearing upon the question in this case. They hold that a railroad corporation is not chargeable with exemplary damages in cases of accidental injuries because their agents were guilty of gross negligence, but that facts must be shown which charge the corporation itself with gross negligence — such as knowledge of the incompetency of the agent from bad habits, or other known causes, rendering him unfit for the employment. (*Cleghorn* v. *N. Y. Central Railroad Co.*, 56 N. Y., 44; 47 id., 282.) But in libel cases, the falsity of the libel being proof of malice sufficient to uphold exemplary damages, the right to recover them in the discretion of a jury, rests in the very act done in the publication of the false libel; and whoever is chargeable with that act is chargeable with the legal consequence, which is the right of the jury to redress the injury by imposing reasonable damages beyond any injury actually shown. There is no doubt the corporation is chargeable with the act of publication.

In the one class of cases (the railroad injuries), the damages are easily measured by the physical injuries suffered, and they may be made completely compensatory by a jury; but in the other class, where the injury is to character, it is almost impossible to measure it by fixed standards. The damages must be largely discretionary; and the question how far malice shall affect that discretion must be left to the sound judgment of a jury. In submitting the question of malice, in this case, to the jury, I think the learned judge did not err; and although the damages in this case seem to me to be larger than the evidence called for, I think there is no legal ground to justify our interference.

Judgment reversed, new trial ordered, costs to abide event.