STATE OF MISSOURI, Appellant, *v.* A. B. WAKEFIELD, Respondent.

### November 4, 1879.

The utterance of slanderous words, not written or printed, is not a criminal offence in Missouri.

APPEAL from the St. Louis Court of Criminal Correction. *Affirmed.*

M. W. HOGAN, for the appellant.

CLINE, JAMISON & DAY, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This is a criminal prosecution upon information charging the defendant with having uttered slanderous words against the St. Louis chief of police and a private citizen. The information was demurred to, as charging no criminal offence known to the laws of Missouri. The demurrer was sustained, and the State appealed.

No statute of the State forbids the utterance of slanderous words, not written or printed, as a crime to be punished. If the act is criminal under our law, this must be because it was made so by the common law of England, or by some statute or act of Parliment made prior to the fourth year of the reign of James I., which is of a general nature, not local to that kingdom, and which is not repugnant to or inconsistent with our constitutional or statute law. Wag. Stats. 886, sect. 1.

That a written libel may be an indictable offence is not open to question. But we know of no instance in which an oral slander, reflecting on personal character or conduct, has been held to be so in the United States. In England, both before and since the fourth year of the reign of James I., criminal prosecutions for words spoken have not been unknown; but they furnish neither precedent nor authority for the present case. Most of them arose under the statutes of *scandalum magnatum*, which have always been considered repugnant to and inconsistent with the institutions of this country, and therefore as having no legal influence on this side of the Atlantic. Those statutes made it penal "to speak or to tell any false news, lies, or other such false things, of the prelates, dukes, earls, barons, and other nobles and great men of the realm, and also of the chancellor, treasurer, clerk of the privy seal, stewards of the king's house, the justices of the one bench or the other, and other great officers of the realm." The spirit of these several enactments originated in the early martial character of the British Constitution. Even the tenures were military, and so were the services. Absolute subordination to superiors in estate or condition was considered essential to the welfare and safety of the nation. A consideration of vital importance in the eyes of the loyal legislators and judges was, that words reflecting on a magistrate in the execution of his office virtually arraigned the king for his appointment of an unworthy person. But as in this country we have no prelates, dukes, earls, barons, or other nobles, so also we have no "great men," in the sense which pertains to that description of persons in the British statutes. Here all are equal before the laws. An able law-writer says: "In this country no distinction as to persons is recognized, and, in practice, a person holding a high office is regarded as a target, at whom any person may let fly his poisonous words. High official position, instead of affording immunity from slanderous and libellous charges, seems

rather to be regarded as making his character free plunder for any one who desires to create a sensation by attacking it." Folkard's Starkie on Slander, sect. 144, note 1. The picture may be highly colored, but it is sufficiently truthful to illustrate how generally the British laws on this subject are held to be incompatible with American institutions.

Another subject of criminal procedure under the British system may be found in blasphemous utterances against the Christian religion and its divine objects of worship. There, " Christianity makes part of the law of the land, on account of its connection with the Established Church." In *The People* v. *Ruggles*, 8 Johns. 290, an indictment for blasphemy was sustained on the general ground that the offence was " a gross violation of decency and good order." Chief Justice Kent held that " the people of this country profess the general doctrines of Christianity as the rule of their faith and practice ; " and that " nothing could be more offensive to the virtuous part of the community, or more injurious to the tender morals of the young, than to declare such profanity lawful." It is not material to inquire whether an indictment would be sustained in Missouri upon the same grounds. The case is referred to for the purpose, only, of exemplifying the particular kinds of oral utterances which have been held to be indictable under the common law and British statutes.

An examination of all the authorities will show that, not even in England, was there ever a criminal prosecution sustained for words spoken, simply because they were defamatory of a private person not within the privileged classes. The privilege there enjoyed by the magistrates was never extended to inferior ministerial officers, or to those whose official character might be supposed to correspond with that of an American chief of police. In America, where there are no privileged classes, prosecutions for words spoken have been wholly unknown, except where the words, or their tendencies, involved something more than mere personal

detraction. Starkie says: "An indictment will not lie for mere words not reduced into writing, unless they be seditious, blasphemous, grossly immoral, or addressed to a magistrate while in the execution of his office, or uttered as a challenge to fight a duel, or with an intention to provoke another to send a challenge." Stark. on Slander, sect. 758. It is not pretended that the information in the present case brings the words uttered within any of these exceptions. Another high authority says: " Slander is not, like libel, an indictable offence. *Bailey* v. *Dean*, 5 Barb. 297. Nor is a single precedent of any criminal proceeding for unwritten imputations upon the characters of individuals to be found, except in cases of high treason; * * * and it must have been as constituting rather an offence against the government than an injury to the individual, and being therefore seditious, that words reflecting on a magistrate in the immediate execution of his office were for the first time in the reign of Queen Anne held to be indictable. *Regina* v. *Langley*, 2 Ld. Raym. 1029; Holt. 654." Towns. on Slander (3d ed.), 66, note 3.

The words charged in the information in the present case were purely defamatory of the persons mentioned, — accusing them of having formed unlawful combinations for the commission of certain misdemeanors. There was nothing to bring them within any known exception to the general rule that slanderous words, not reduced to writing, constitute no offence against the criminal laws of this State.

The demurrer to the information was properly sustained. All the judges concurring, the judgment is affirmed.