INGRAHAM, J.
--This is an appeal from a judgment entered ona verdict of the jury in favor of the plaintiff for $1,500. No motion was made for a new trial, and the case before us now is an appeal from that judgment, and presents.questions arising only upon the exceptions taken on. the trial. The action is for liable, the appellant being the proprietor of a newspaper published in the city of New York, called “The Morning Advertiser.’’ On the morning of November 7, 1892, this newspaper published what purported to be a telegram from London, which, in effect, charged the plaintiff with being at the head of a movement to raise an enormous corruption fund among English exporters, manufacturers, and merchants, to be used for the purpose of “buying votes and other dishonorable expedients to bring about the election of Mr. Cleveland” as president of the United States. There was nothing uncertain in the charge made against the managers of this alleged scheme, of which this plaintiff was said to be at the head. The money that had been raised by the plaintiff and those associated with him was not to be used in the legitimate expenses of the campaign, but to “ buy votes and other dishonorable expedients,” and in “debauching the ballot.” At the close of the testimony, the de'fendant asked the court to direct a verdict for both of the defendants. The motion was denied, and an éxception taken, and the appellant now asks the court to reverse this judgment, upon the broad ground that the publication was not libelous per se; that to charge a person with raising a large sum of money to be used for the purpose of “ buying votes ” and “ debauching the ballot,” and “other dishonorable expedients” to bring about the election of a candidate for office, is not charging him with the commission of a crime, or of an áct which would tend to bring him in dishonor and disrepute. The editor of this newspaper testified that he did not consider this an outrageous charge; that he did not regard it as the charge of an infamous crime; that he did not consider an attempt to raise money in England to buy the American presidential election an infamous crime ; that-he did not consider that such a charge made against the plaintiff reflected upon him; and that it did not reflect upon the plaintiff’s honesty and integrity.
*567 The legislature has provided, by subdivision 6 of section 41p of the Penal Code, that “ any person who advances or pays or causes to be paid, any money, or other valuable thing, to or for the use of any other person, with the intent that the same, or any part thereof, shall be used in bribery at any election, * * * is guilty of an infamous crime, punishable by imprisonment for not less than three months nor more than one year.” And, although this section was enacted in 1894, the substance of the provision has been for many years the law of this state; for, by section 4 of title 7 of chapter 130 of the Laws of 1842, it is provided that, “ if any person shall by bribery, menace or other corrupt means or device whatsoever, either directly or indirectly, attempt to influence any elector of this state in giving his vote or ballot, or deter him from giving the same * * * such person shall be adjudged guilty of a misdemeanor and shall be fined or imprisonecl" And the general course of legislation of late years has recognized the increasing danger to our form of government in the use of large sums of money to influence elections, and, by increasing the stringency of the provisions against it, and by increasing the punishment for a violation of these provisions, has attempted to prevent such use. No greater crime against the state could be charged than that of being at the head of a movement the object of which was wholesale bribery and corruption, and to attempt to influence by bribery the course of an election of chief magistrate of the country. No attempt is made to justify this charge, and and the defendants stand here, having made this charge against a private individual of irreproachable character, occupying a high position in the mercantile community, without a shadow of foundation, making no effort to ascertain the truth, reckless of the consequences, intent only on gaining an advantage for the party with whom it was in sympathy, and entirely regardless of the effect of the publication upon the individual. It is difficult to conceive of ■a much more serious charge against such an individual than the present. The publication was plainly libelous per se, and, upon the proof, the plaintiff was entitled to a verdict.
The defendant took many exceptions to the charge to the jury, and two or three of them require notice. The charge, under proper instructions, left it to the jury to say whether or not there was actual malice, and the jury was instructed, in case they found actual malice, they could give exemplary damages. To that the defendant excepted, and here claims that there was no evidence to justify the jury in finding the actual malice sufficient to authorize exemplary damages. But here the nature of the publication, without any attempt to ascertain its correctness, would justify a jury in finding that the defendant committed the libel with a wanton and reckless indifference, and with actual malice sufficient to sustain exemplary damages. Samuels v. Association, 9 Hun, 294 (dissenting opinion adopted by the court of appeals, 75 N.Y. 604).
To charge a private individual, attending to his business in the ordinary way, with the commission of such a crime, without investigation, is certainly not a proper regard for the interest of the *568 individual-, and the argument urged upon us, that the defendant sustained no damage, because such a charge was so ridiculous upon its face that no friend of the plaintiff would believe it for a moment to be true, should have been considered by the editors o£ this newspaper before publishing it to the world as a fact.
The distinction between malice implied, as a matter of law, upon the publication of a libel per se, and the actual malice the existence of which the jury must find before they can award ex-planary damages, was clearly stated to the jury, and they were correctly instructed that the nature of the publication itself, and the circumstances under which it was published, could be considered by the jury in determining whether or not such actual malice did exist, but from that, and the other evidence in the ease, they must affirmatively find such actual malice, before they would be justified in awarding exemplary damages. It is well settled that, in determing the amount of damage, where a publication is libelous per se, the jury has the right to consider the-mental suffering which may have been occasioned to the plaintiff bv the publication. See 13 Am. & Eng. Enc. Law, 445, and cases-cited in notes 2 and 5.
We have carefully read over the charge of the court, and think it was as favorable to the defendant as the facts justified. Some phrases, taken alone, might be criticised, but we must remember that the charge was relating to this specific publication,which was libelous per se. So, when the court speak of the inference of malice, and that the said inference is irrebuttable, it is alluding to this particular libel charged, and the meaning evidently was that in such a publication, the jury were bound to infer malice, so as to entitle the plaintiff to a verdict for at least nominal damages, and that was undoubtedly correct.
The refusal of the court to charge several of the requests proposed by the defendant was based upon the fact that' the substance had already been covered by the charge as delivered. As to the exception taken to the word “retribution," in the charge, as relating to the amount of damages that the plaintiff is. entitled to as compensation for the wrong, the context shows that that word was used, not in relation to punishment, but to the fixing by the-jury of such a sum of money as will furnish the plaintiff a fair and just compensation for the wrong. Taking the charge as a whole, we think it as favorable to the defendant as the ease would justify, and that the defendant has no ground for complaint. The exceptions taken to the evidence seem to be immateral. The judgment should therefore be affirmed, with costs.
All concur.