LEROY B. CRANE, Respondent, *v.* JAMES GORDON BENNETT, Appellant.

1. LIBEL — LIABILITY OF NEWSPAPER PROPRIETOR FOR PUNITIVE DAMAGES FOR ACTS OF HIS EMPLOYEES. The proprietor of a newspaper who surrenders to his general manager and employees the general management of the business, absents himself from the jurisdiction where his paper is edited and published, leaving such manager in entire charge thereof, is responsible for the manner in which the business so delegated is performed by his manager; and when the latter, or an employee, publishes a libel *per se*, and upon being apprised of the groundlessness of the charges not only refuses to make or publish any retraction thereof, but on the contrary republishes the libel, the proprietor is liable for punitive damages.

2. JUDICIAL OPINIONS BINDING ONLY SO FAR AS RELEVANT. In applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different.

3. PROOF OF FALSITY OF PUBLICATION EVIDENCE OF MALICE — CHARACTER OF MALICE A QUESTION OF FACT. In an action of libel, proof by the plaintiff tending to establish the falsity of the alleged libelous publication is evidence of malice, and if such evidence is introduced a question for the jury is presented whether the malice is of such a character as to call for punitive damages, and that question is not to be withdrawn from it because the defendant gives evidence which tends to show that there was no actual malice.

*Crane* v. *Bennett*, 77 App. Div. 102, affirmed.

(Argued December 8, 1903; decided January 5, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 23, 1902, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown, William Jay, Flamen B. Candler* and *Robert W. Candler* for appellant. The learned trial court committed error in its charge and in ruling in respect to requests to charge in that it misled the jury as to the degree of malice which will authorize an award of punitive damages and permitted them to mulct the defendant in such damages for acts of his employees which he did not authorize or ratify. (*Mitchell* v. *Turner*, 149 N. Y. 39 ; *Powers* v. *M. R. Co.*, 120 N. Y. 178 ; *Krug* v. *Pitass*, 162 N. Y. 154 ; *Prince* v. *B. D. Eagle*, 16 Misc. Rep. 186 ; *Ullrich* v. *N. Y. Press Co.*, 23 Misc. Rep. 168 ; 18 Am. & Eng. Ency. of Law [2d ed.], 1002 ; *Lewis* v. *Chapman*, 16 N. Y. 369 ; *Eviston* v. *Cramer*, 57 Wis. 570 ; *Neeb* v. *Hope*, 2 Atl. Rep. 568 ; *Brewer* v. *Jacobs*, 22 Fed. Rep. 217 ; Newell on Slander & Libel, 315 ; *Liddle* v. *Hodges*, 2 Bosw. 537.) Substantial errors were committed in the charge to the jury and in the refusals to charge as requested and in the modifications thereto. (*Cleghorn* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 44 ; *Hyatt* v. *N. Y. C. & H. R. R. R. Co.*, 6 Hun, 306 ; *Potter* v. *E. J. P. Co.*, 68 App. Div. 94.)

*Eugene Frayer* for respondent. The case was a proper one for the award of exemplary damages in the discretion of the jury. (*Holsapple* v. *R., W. & O. R. R. Co.*, 86 N. Y. 275 ; *Young* v. *Fox*, 26 App. Div. 261 ; *Wolf* v. *G. F. Ins. Co.*, 43 Barb. 400 ; 41 N. Y. 620 ; *Barker* v. *C. S. S. Co.*, 91 Hun, 495 ; *Lounsbury* v. *Duckrow*, 22 Misc. Rep. 434, 436 ; Code Civ. Pro. § 191, subd. 3 ; *Davis* v. *Kallfelz*, 22 Misc. Rep. 602 ; *Holmes* v. *Jones*, 121 N. Y. 461 ; *Warner* v. *P.*

*P. Co.*, 132 N. Y. 181; *Smith* v. *Mathews*, 6 Misc. Rep. 162; 9 Misc. Rep. 427; 152 N. Y. 152; *Grant* v. *Herald Co.*, 42 App. Div. 354.) No error calling for a reversal of the judgment was made in the court's charge to the jury or in its refusals to charge. (*Caldwell* v. *N. J. S. B. Co.*, 47 N. Y. 282; *Heilbron* v. *Herzog*, 165 N. Y. 106; *O'Leary* v. *N. Y. P. Co.*, 51 App. Div. 2; *Hamilton* v. *Eno*, 81 N. Y. 116; *Samuels* v. *Evening Mail*, 9 Hun, 295; 75 N. Y. 604; *Bergmann* v. *Jones*, 94 N. Y. 51; *Warner* v. *P. P. Co.*, 132 N. Y. 181; *McMahon* v. *Bennett*, 31 App. Div. 16; *Morgan* v. *Bennett*, 44 App. Div. 323; *McMahon* v. *N. Y. N. Co.*, 51 App. Div. 488.)

MARTIN, J. This action was for libel. It was based upon four articles published in the New York *Herald*, a newspaper owned by the defendant who resides in France but whose paper is published in the city of New York. Its management was confided solely to persons in his employ who had practical control of the entire business.

The plaintiff was a magistrate in the city of New York. The matter complained of was published in four issues of the defendant's newspaper, and related to alleged flagrant misconduct imputed to the plaintiff in the discharge of his official duties. The articles were published respectively on the twenty-first, twenty-second, twenty-third and twenty-fourth days of August, 1899. The first and each succeeding article related to the same subject and they were all libelous *per se*. After the publication of the first and of each succeeding one, the plaintiff wrote to the defendant's manager stating that each of the articles was untrue and unjust, and asked that the defendant retract or apologize therefor. Instead of sending or publishing a retraction or apology, another article to the same general effect and relating to the same subject was published, including an editorial. After these repeated requests of the defendant's manager and after writing to the defendant personally upon the subject, stating that the publication of such articles was creating a feeling of distrust and tending

to disgrace him in the eyes of the community, the plaintiff waited until the thirteenth of the following November, when this action was brought to recover the damages sustained by reason of such publications. That each of the articles published was proved to be false and was libelous *per se* is not denied, nor is it disputed that their publication was continued from day to day and no retraction made by the defendant or those managing and conducting the publication of his newspaper and the business connected therewith. Obviously there was abundant evidence to justify the jury in finding that the publication of the libels complained of was recklessly and wantonly made and continued, with utter disregard of the rights or feelings of the plaintiff. This brief but general review of the situation is all the statement as to the facts we deem necessary to dispose of the questions of law which are presented upon this appeal.

The defendant contends that as the acts complained of were performed in his absence by his manager and employees, he is not liable for punitive or exemplary damages, inasmuch as there was no proof of personal ill-will or hatred upon his part sufficient to form a basis for the finding of actual malice. That the proprietor of a newspaper is responsible for all that appears in its columns, although the publication may have been made in his absence and without his knowledge, is too well settled to require discussion. His liability is not upon the ground of his being the publisher, but because he is responsible for the acts of the actual publisher. (Townshend on Slander and Libel, § 123; Newell on Defamation, Slander and Libel, p. 377; Odgers on Libel and Slander, p. 412; *Huff* v. *Bennett*, 4 Sandf. 120; *Andres* v. *Wells*, 7 Johns. 260.) In libel cases, the falsity of the libel being proof of malice sufficient to uphold exemplary damages (a question we shall presently discuss), the right to recover them in the discretion of the jury, rests in the very act done in the publication of the false libel; and whoever is chargeable with that act is chargeable with the legal consequence, which is the right of the jury to redress the wrong by imposing reasonable dam-

ages beyond any injury actually shown. (Dissenting opinion of DAVIS, P. J., in *Samuels* v. *Evening Mail Assn.*, 9 Hun, 288, 294; affd., 75 N. Y. 604.)

Although a mere servant or agent employed to perform some specific act for a principal may not render the latter absolutely liable for increased damages on account of his motives in performing it, yet, when a principal surrenders to his general manager and employees all his business affairs, or the general management of some particular business, absents himself from the jurisdiction where his paper is edited and published, leaving such manager in entire charge thereof, he is responsible for the manner in which his business is conducted. In other words, a principal surrendering his entire business to another to be conducted for him should be held to the same responsibility he would incur if he himself personally directed it, as to all matters coming within the line of the authority which he has conferred upon such manager or employees. Therefore, while, as was held by the trial court, the defendant might not have been liable for any personal ill-will of his employees or servants against the plaintiff, if there was a willful departure from such business for their private or individual purposes, yet he is responsible for the manner in which the business so delegated was performed by his manager, and if the publication complained of was wanton, reckless or heedless of the rights or feelings of the plaintiff, and upon being apprised of the groundlessness of the charges there was a continued refusal to make or publish any retraction thereof, the defendant was fully responsible for the acts of his general manager, and liable for such punitive damages as the jury, in its discretion, might award. In considering this question we have not regarded it necessary to refer to the cases, relied upon by the learned counsel for the defendant, relating to the question of punitive damages in ordinary actions for negligence, as it is manifest that the rule governing the question in such actions is totally unlike that which obtains in actions for tort or personal wrong.

Upon the trial the counsel for the defendant submitted to

the court a great number of requests to charge, some of which
were charged, others modified and charged as modified, while
others the court refused.   To such rulings exceptions were
taken by the defendant.   Although many of these exceptions
were discussed by counsel upon the argument and in their
briefs, still the exception to that portion of the charge by
which the court instructed the jury "that the falsity of the
libel is sufficient evidence of malice to uphold exemplary
damages, but the plaintiff's right to recover exemplary dam-
ages is in the discretion of the jury," fully presents the only
other question we deem it necessary to discuss or decide upon
this appeal.   Indeed, we should not have regarded it neces-
sary to discuss that question at all but for the fact that there
seems to be a misapprehension among some of the members
of the profession, and an existing uncertainty on the part of
courts as to the effect of the decisions of this court relating to
the existing rule upon that subject.   The situation seems to have
chiefly arisen from our decision in *Krug* v. *Pitass* (162 N. Y.
154), or from considering what was said in the opinion in that
case without limiting it to the facts involved, rather than
what was decided by the court.   That was an action against
several defendants for the publication of an article libelous
*per se.*   Each of the defendants testified he had no malice or
ill-will toward the plaintiff, when the latter, in order to show
express malice, was permitted to prove against all the defend-
ants that, several years before the publication, one of them,
who knew nothing about the article until after it had been
published, had made statements expressing ill-will and con-
tempt for the plaintiff, which were never heard by or com-
municated to the other defendants before the publication
complained of, and this court held that a judgment recovered
against all must be reversed, as the general malice proved
neither caused nor prompted the publication, and that the
admission of such evidence presumably affected the verdict.
That case was properly decided.   In the opinion, however,
there are some expressions that may perhaps be regarded as
not absolutely accurate because not including certain excep-

tions or added principles which would be applicable to a case where the circumstances were essentially different. As was said by the learned writer of that opinion in *Colonial City Traction Co.* v. *Kingston City R. R. Co.* (154 N. Y. 493, 495): " It was not our intention to decide any case but the one before us, * * * and our opinion should be read in the light of that purpose. If, as sometimes happens, broader statements were made, by way of argument or otherwise, than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance." (*Stokes* v. *Stokes*, 155 N. Y. 581, 594 ; *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538, 551.) It cannot be reasonably expected that every word, phrase or sentence contained in a judicial opinion will be so perfect and complete in comprehension and limitation that it may not be improperly employed by wresting it from its surroundings, disregarding its context and the change of facts to which it is sought to be applied, as nothing short of an infinite mind could possibly accomplish such a result. Therefore, in applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different. When this rule is followed, much of the misapprehension and uncertainty that often arises as to the effect of a decision will be practically avoided. Construing the *Krug* case in accordance with the foregoing rule and giving it only the effect suggested, it is manifest that it has in no way affected the doctrine that the proof of the falsity of a libel, of its character and of the circumstances under which it was published, is sufficient to present a question for the jury whether the malice was of such a character as to call for exemplary or punitive damages, and that that question rests with the jury alone.

For a quarter of a century the dissenting opinion in *Samuels* v. *Evening Mail Assn.* (9 Hun, 288) seems to have been regarded as containing a correct statement of the principle applicable to the question of punitive damages in actions for libel. In that case the General Term reversed the action of the trial court upon the ground that the evidence did not justify the jury in awarding punitive damages and it set aside the verdict on that ground. DAVIS, P. J., however, dissented, and upon appeal to this court (75 N. Y. 604) the judgment of the General Term was reversed and that of the trial court affirmed upon the dissenting opinion. The principle established by the decision of this court in that case as stated in the opinion of DAVIS, P. J., is that " the falsity of the libel was sufficient evidence of malice; * * * The libel being false, the malice imputable from the act of publication is a part of the *res gestæ* from which the action arises. * * * The plaintiff in an action of libel gives evidence of malice whenever he proves the falsity of the libel. It becomes, then, a question for the jury whether the malice is of such a character as to call for exemplary or punitive damages; and that question is not to be taken away from the jury because the defendant gives evidence which tends to show that there was, in fact, no actual malice. When he gives no such evidence it is the duty of the court to say to the jury that, upon proof of the falsity of the libel, the plaintiff is entitled to exemplary damages in their discretion. (*Tillotson* v. *Cheetham*, 3 Johns. 56; and see opinion of KENT, Ch. J., in same case; *Taylor* v. *Church*, 8 N. Y. 452, where the rule of *Tillotson* v. *Cheetham* is approved; *Hunt* v. *Bennett*, 19 N. Y. 173.) But where he gives evidence tending to prove the absence of actual malice, then it is the duty of the judge to submit to the jury the question, as one of fact, whether such malice existed in the publication."

That case was cited with approval by this court in *Bergmann* v. *Jones* (94 N. Y. 51, 62). It was there held that where a publication is libelous *per se*, and is proved to be

3

false, this is sufficient evidence to require the submission of the question of malice to the jury, and to warrant the allow-ance of exemplary damages, although the defendant gives evidence tending to prove no actual malice. Such evidence is to be considered by the jury, and it is for them to deter-mine, in view of all the evidence, whether punitive damages should be allowed or not. Again in *Warner* v. *Press P. Co.* (132 N. Y. 181, 184) the *Samuels* case was followed and it was there said: "The plaintiff gave evidence of malice when she proved the falsity of the libelous publication, and in the absence of evidence on the part of the defendant tending to show that it had neither the desire nor the intention to wrong her, it would have been the duty of the court to instruct the jury that the plaintiff might be awarded exemplary damages in their discretion. But testimony was adduced on the part of the defendant, tending to prove the absence of actual malice on its part towards the plaintiff, which taken in con-nection with the evidence of malice which the law imputed when the falsity of the libel was established, presented a ques-tion of fact whether malice existed in the publication. If found to exist, then, in their discretion, the jury could award exemplary damages." That case was also cited with approval and followed in *Marx* v. *Press P. Co.* (134 N. Y. 561, 563); *Van Ingen* v. *Star Co.* (1 App. Div. 429; affirmed on opinion below, 157 N. Y. 695), and *McFadden* v. *Morning Journal Assn.* (28 App. Div. 508, 517). In *Gray* v. *Sampers* (35 App. Div. 270) the rule stated was that in an action of libel, proof by the plaintiff tending to establish the falsity of the alleged libelous article is evidence of malice, and where it is given a question is presented for the jury whether the malice is of such a character as to call for exemplary or punitive damages, and this question is not taken from the jury because the defendant gives evidence which tends to show that there was in fact no actual malice. That was the rule which was also followed by the learned Appellate Division in the case at bar (77 App. Div. 102).

In *Smith* v. *Matthews* (152 N. Y. 152) this court held that

punitive damages for libel are not limited to cases of actual malice, but may be awarded for a libel recklessly or carelessly published, as well as one induced by personal ill-will. The *Samuels* case was again considered and cited with approval in *Holmes* v. *Jones* (121 N. Y. 461, 467) and it was there said: "So far as the libel was not justified, it was for the jury to determine the amount of the damages to be awarded therefor. If they came to the conclusion from the circumstances and the nature of the charge made, that the publication was malicious, in bad faith, or recklessly, carelessly or wantonly made, they could go beyond compensation and award punitive damages." In the same case (147 N. Y. 59, 67) this court said : "But the amount of damages in an action for libel is peculiarly within the province of the jury. The jury may give nominal damages, or damages to a greater or less amount, as they shall determine. The jury may accord damages which are merely compensatory, or damages beyond mere compensation, called punitive or vindictive damages, by way of example or punishment, when in their judgment the defendant was incited by actual malice or acted wantonly or recklessly in making the defamatory charge." In *King* v. *Root* (4 Wend. 139), which was an action for libel, the court said : " The jury may not only give such damages as they think necessary to compensate the plaintiff for his actual injury, but they may also give damages by way of punishment to the defendants." (See, also, *Cook* v. *Ellis*, 6 Hill, 466, and *Tifft* v. *Culver*, 3 Hill, 180.) In *Burr* v. *Burr* (7 Hill, 207, 218), in discussing this general question, it was said : " If a wanton and malicious outrage is committed upon the civil rights of an individual, it would oftentimes be monstrous injustice to confine the injured party, when seeking for redress, to the actual ascertainable damages he may have sustained. Such a rule would be a license to every species of private wrong ; and in most cases of trespass to the person, it would be impossible to apply it with any degree of accuracy."

This examination of the authorities bearing upon the question clearly discloses that the rule of law stated by the trial

court was proper and is justified by a long line of decisions in this state. The general rule is that in an action for libel, proof by the plaintiff tending to establish the falsity of the alleged libelous publication is evidence of malice, and if such evidence is introduced, a question for the jury is presented whether the malice is of such a character as to call for punitive damages, and that question is not to be withdrawn from them because the defendant gives evidence which tends to show that there was no actual malice. We think the foregoing rule is well established by the authorities of this state and elsewhere, and that it must be regarded as the true rule, notwithstanding any expressions found in other cases where the question was not necessarily involved, which may not be in consonance with it. The doctrine of any such cases will not be followed, but must be regarded as overruled so far as they may be in conflict with this decision.

Moreover, as we have already seen, the jury might well have found, not only that the publications complained of were grossly false, were recklessly and wantonly made in bad faith, but also that after the defendant and his manager were fully informed of their falsity and injustice, they were purposely and willfully continued without apology or retraction of any kind. To paraphrase the language of Chief Judge NELSON in *Hotchkiss* v. *Oliphant* (2 Hill, 510, 516), the defendant might have inadvertently published the original article and have been chargeable only with mistake or indifference to the truth, but having been advised of his error and having refused to correct it, the case rises to one of premeditated wrong, one of determined malignity towards the plaintiff, which should be dealt with accordingly, and there is no longer room for any indulgence towards the defendant's acts, but he becomes a fit subject for exemplary punishment, and the charities of the law give way to such a prostitution of the public press.

Other questions were discussed at the bar, but as they were properly disposed of by the court below and were of no general or great importance, we regard it as unnecessary to continue this opinion by any discussion of them, but will content

ourselves by concurring in the disposition made of them by the court below.

The judgment of the Appellate Division should be affirmed, with costs.

Parker, Ch. J., Gray, O'Brien, Bartlett and Cullen, JJ., concur; Haight, J., absent.

Judgment affirmed.