FARMERS' LOAN & TRUST CO. v. NEW YORK & N. RY. CO. et al.

(Supreme Court, Special Term, Westchester County. July, 1905.)

1. RAILROADS—FORECLOSURE OF MORTGAGE—RIGHT OF TRUSTEE TO BRING ACTION—REQUEST OF HOLDER OF BONDS.

A mortgage of a railroad company to secure the payment of its bonds authorized a foreclosure by the trustee when requested by the "holders" of $2,000,000 of the bonds. A third person was the holder of over $2,000,-000 of the bonds. He was given physical possession thereof by the actual

owners for the purpose of requesting a foreclosure for them, and he made the request. *Held*, that the request authorized a foreclosure.

2. SAME—ACT OF COMPETING RAILROAD—EFFECT ON RIGHT TO FORECLOSE.

The right of a trustee in a mortgage of a railroad company to secure the payment of its bonds to foreclose, as authorized by the mortgage, stipulating that the trustee might foreclose when, in his discretion, he might deem it necessary, was unaffected by the fact that a competing railroad had secured control of the mortgagor and diverted traffic from it in order to prevent it from paying the interest on the bonds thereby compelling a foreclosure.

Action by the Farmers' Loan & Trust Company against the New York & Northern Railway Company and others. Judgment for plaintiff.

See 28 N. Y. Supp. 933, 44 N. E. 1043.

Suit by the mortgage trustee to foreclose a second mortgage by the defendant railroad company to secure $3,200,000 of bonds.

The mortgage contained a provision that if default in payment of interest should continue 12 months after presentation of coupons and demand of payment, the trustee might, and upon the demand of the "holders" of $2,000,000 of the bonds should, foreclose the mortgage.

Presentation and demand was made on June 1, 1892, on the coupons which came due that day, and default made. This suit was begun thereon on July 23, 1893.

The complaint alleges all in one paragraph and sentence that the plaintiff received a written request of the holders of more than $2,000,000 of the bonds to foreclose the mortgage, "and to declare the whole principal sum secured by said mortgage to be at once due and payable"; and that "the plaintiff has elected and hereby does elect and declare that the principal of all the bonds secured by said mortgage" is due and payable.

The railroad of the mortgagor company was parallel to and a rival of a branch of the New York Central Railroad Company.

The defendant mortgagor did not answer, but two stockholders, Holmes and Pick, were allowed to intervene and answer.

They pleaded a defense that the New York Central Railroad Company purchased a majority of the stock of the mortgagor company, and thereby elected its directors and appointed its officers, and through them controlled its affairs; and that it caused traffic of the mortgagor company to be refused in order to decrease the receipts of the mortgagor company and prevent it from paying the interest on its said bonds, and also diverted the revenues of the said company for the same purpose, all with the object of causing a foreclosure and buying in the property; and that the demand made on the aforesaid trustee to foreclose was made and this suit commenced at the request and in behalf of the New York Central Company.

It is proved that the New York Central Company bought a majority of the stock of the mortgagor company in April, 1893, which was after the said default of the mortgagor company, and also $1,700,000 of its second mortgage bonds; that it did thereupon get control of the mortgagor company by the election of its directors and appointment of its officers, and that the demand to foreclose was made and this suit brought at its request and in its behalf.

There is no evidence that it caused traffic to be refused, or diverted the revenues of the mortgagor company from the payment of the interest on its said bonds.

Charles F. Brown and John F. Horan, for plaintiff.

Louis Marshall, Nathaniel A. Elsberg, and Charles H. Young, for defendants.

GAYNOR, J. This case has been tried before, and the judgment for the plaintiff reversed in the Court of Appeals. 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689. A long opinion

was there written for the instruction of the judge who should try the case the next time, for that is the prime purpose of such an opinion. I suppose I may properly say and point out that the said opinion is the principal source of my embarrassment, instead of making my course clear. The case is now submitted to me on the printed evidence of the former trial, no additional evidence being offered.

1. The mortgage provides that the trustee must foreclose on the request of the "holders" of $2,000,000 of the bonds after the continuance of a default in the payment of interest for 12 months. The request was made by Drexel, Morgan & Co. That they were the "holders" of over $2,000,000 of the bonds at the time is not disputed. They were given physical possession of $1,700,000 of them by the New York Central Railroad Company, the actual owner thereof, and of the balance by two other persons, the actual owners thereof, for the express and stated purpose of making the request and causing the foreclosure for the said owners. It is undisputed that they were the agents of the owners for that purpose. I do not therefore understand how the learned opinion written in the Court of Appeals raises a question on this head. It seems to say that the "owners" of $2,000,000 of bonds did not make the request. The mortgage does not say "owners" but "holders," and it is the unquestionable fact that the bonds were turned over to Drexel, Morgan & Co. in the usual way to "hold" the same for and represent the owners in making the request and causing a foreclosure and a purchase of the foreclosed road by a bondholders' committee for the purpose of reorganization. This evidence seems to have been overlooked. And if the word "owners" be the one to use, then the owners did make the request through their agents.

I must therefore find that a request to foreclose was made by the "holders" and "owners" of more than $2,000,000 of the bonds. Trial judges have been warned of late that they should not accept everything said in a judicial opinion, but only the actual decision of the court. Colonial City Traction Co. v. Kingston City R. Co., 154 N. Y. 495, 48 N. E. 900; Columbia Bank v. Birkett, 177 N. Y. 112, 66 N. E. 652, 102 Am. St. Rep. 478.

2. I do not find that the trustee commenced the suit at its own election, also, as a clause in the mortgage empowered it to do. The learned opinion in the Court of Appeals says that it was not necessary for that court to decide that question. And yet it could not reverse the judgment on the grounds it did except on the theory that the suit was based on the request to foreclose only, and not on the election of the trustee also. For the exclusion of the evidence that the New York Central Company after getting control of the mortgagor company refused traffic for the latter company in order to prevent it from getting in funds to pay the interest on the bonds, and also otherwise diverted its revenues from such payment, and the refusal of the trial judge to make any findings on these heads, and for which the judgment was reversed, were proper and not erroneous rulings if the trustee was maintaining the action on its own election. In that case it is plain that such evidence and

findings would be irrelevant. The trustee could not be prevented from foreclosing by wrongdoing of any one. Indeed, if the New York Central Company was destroying the mortgagor company, that in itself would be a reason for the trustee to elect to foreclose and rescue the mortgaged company from the clutches of· the New York Central Company, by enabling the bondholders and stockholders of the mortgaged company to buy on the foreclosure and reorganize, unless the New York Central Company should bid enough to pay such bondholders and stockholders what they deemed themselves entitled to. Although the learned opinion says the question was not decided, I must take it that the court did decide it in the negative, for otherwise the reversal of the judgment must have been a most strange inadvertence. The court could not have reversed the judgment on the grounds it did if the action was brought or was maintainable on the trustee's election.· The rulings of the trial judge on which the reversal was based were undoubtedly correct if the action was maintainable on the trustee's election, made before or after the action was commenced.

3. On the present trial there is no evidence of the said alleged wrongdoing of the New York Central Company. None was offered. The bulk of the opinion in the Court of Appeals is to elucidate and enforce the proposition that if the New York Central Company was guilty of the said wrongdoing, and wrecked the mortgaged company, with the object of preventing it from paying its interest and bringing on a foreclosure, a court of equity should not entertain a foreclosure suit brought by the trustee at the request and in behalf of the New York Central Company in order to carry out its wrongful scheme. The mere statement of that proposition suffices without another word, so familiar is it to judges and lawyers. But there is now no such case before me. Foreclosure cannot be denied simply because. the New York Central Company got control of the mortgaged company, which was a rival, by acquiring a majority of the stock of the latter, for incredible as it may seem whether in morals or in government that is expressly allowed by statute. If the Legislature allows the stock of a railroad company to be purchased by· its rival, what is to be expected except that the latter company will elect the directors of the former company and thereby control it? The conscience of the people of this country is shocked by such legislation, but no court may annul it. Unless our Legislatures do it there can be no human doubt that the people will finally do it in some other way.

Judgment for the plaintiff.