The main question raised on this appeal is whether the delivery of plaintiff's trunks to the "baggage agent" in the Auditorium Hotel in Chicago was a delivery to defendant or to defendant's connecting carrier in good condition. The respondent contends that the delivery at the hotel was merely a delivery to the transfer company that acted as plaintiff's agent for that purpose, and that proof of delivery to such transfer company in good condition was not a delivery to the initial carrier. In support of this view is the declaration of the witness Scott that his transfer company received from the plaintiff and her husband the baggage in question. The evidence, however, does not warrant this conclusion. There is no contention that Scott, the manager of the transfer company, had any personal connection with the receipt of the trunks from the plaintiff, or that plaintiff's agent, her husband, had any knowledge that he was employing a transfer company. On the contrary, he testified that he knew nothing about that. The evidence conclusively establishes that the trunks were delivered by plaintiff's husband in good condition to the "baggage agent" at the hotel, and that from such "baggage agent" he received railway checks to New York for each separate piece of baggage. It is immaterial, for purposes of this inquiry, whether such baggage was received by an employé of the hotel or an employé of the transfer company. The receipt of the baggage in its then good condition, and the delivery of railway checks therefor, which railway checks were merely receipts for baggage to be transported to New York, was ratified and adopted by the defendant railway company, through its connecting carrier, and the baggage so receipted for was transported to New York upon such railway checks and delivered to the plaintiff at its place of destination. This constituted the person who received the baggage and issued the railway checks therefor the agent of the defendant company for that purpose no matter what other relationship he sustained, either to the hotel or to the transfer company; and the delivery of the trunks to him in good condition was, therefore, a delivery to the defendant railway company, which either by previous authorization, or by subsequent ratification or adoption of his acts, constituted him its agent for the purpose of receiving baggage and issuing railway checks therefor. The dismissal of the complaint was, therefore, error, and the judgment should be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

### BURKHARDT v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. LIBEL AND SLANDER (§ 104*)—ADMISSIBILITY OF EVIDENCE.

In libel for printing plaintiff's picture as that of another who was a murderess, it appeared that a button portrait and a tintype were given to defendant as the pictures of the murderess. The button picture from which the print was made was plaintiff's picture, while the tintype was that of the murderess. *Held*, that the tintype was admissible for the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

purpose of comparison with the button picture to determine whether defendant recklessly and carelessly made the print from the button picture.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 104.*]

2. LIBEL AND SLANDER (§ 124*)—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE—PUNITIVE DAMAGES.

In libel for publishing plaintiff's picture as that of another, evidence *held* sufficient to warrant an instruction on punitive damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 369; Dec. Dig. § 124.*]

3. LIBEL AND SLANDER (§ 120*)—EXEMPLARY DAMAGES.

Where defendant wantonly or recklessly published plaintiff's picture under the name of a disreputable woman, the jury could award punitive damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 350, 351; Dec. Dig. § 120.*]

Appeal from Trial Term, New York County.

Action by Bertha Burkhardt against the Press Publishing Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

W. H. Van Benschoten, for appellant.

Laurence A. Sullivan, for respondent.

McLAUGHLIN, J. Action to recover damages for libel. The libel complained of consisted in printing what the plaintiff claimed was her picture in defendant's newspaper as the picture of one Marie Prosi Cavonne, an alleged barmaid and murderess. The article published in connection with the picture was headed:

"Marie Cavonne, Spanish Widow Who Figured in Murder and Hotel Keeper Dowling Under Arrest For Crime."

Immediately beneath the picture were the words, "Marie Prosi Cavonne."

The defendant in its answer denied the material allegations of the complaint, and as a second and partial defense alleged, in effect, that the article published was true; that before the publication one of its employés called at the home of the family of Marie Prosi Cavonne, and was given two pictures of her by her brother—one a tintype representing a group of three persons, one of whom was pointed out by the brother as being his sister, and the other a small head or button picture which the brother said was a portrait of his sister—that thereupon such employé delivered to defendant to be published with the article the pictures so given to him by the brother as being the pictures of Marie Prosi Cavonne; and that the defendant, relying upon the statements thus made to its employé, and believing them to be true, published the article and pictures. At the trial it appeared that only one picture was printed and that the small one, and it was established beyond dispute that this was not a picture of Marie Prosi Cavonne, and there was sufficient evidence to justify the jury in finding that it was a picture of the plaintiff. The evidence was also suf-

ficient to justify the conclusion of the jury that the defendant's employé, who was instrumental in having the picture printed, knew, or ought to have known, when it was used, that it was not a picture of the Cavonne woman. The plaintiff had a verdict for $1,000, and, from the judgment entered thereon and an order denying a motion for a new trial, the defendant appeals.

In support of the appeal, it is urged that the court erred in admitting in evidence against defendant's objection the tintype referred to. The objection was based upon testimony to the effect that, when the tintype was first handed to defendant's employé, the father of the Cavonne woman said it was a poor picture, and directed a sister to get a better one, and thereupon she went into another room and brought back the button picture. But both pictures were given to the employé, and it was proper for the jury to consider both, with the other evidence, for the purpose of ascertaining when the button picture was used, if the defendant was justified in using it as the picture of the Cavonne woman. In other words, it having been established beyond dispute that the one which was used was not the picture of the Cavonne woman and that the tintype was, the latter was properly received in evidence for the purpose of comparison and determining whether the defendant carelessly and recklessly used the one which it did.

Next, it is claimed that the court erred in instructing the jury that, if they found that the defendant in using the picture acted with wanton and willful disregard of the plaintiff's rights, they might award punitive damages. The form of the charge is not complained of, nor do I understand that the law as laid down by the trial judge is questioned by appellant's counsel, except that the same is not applicable to the facts proved, because in the brief presented he says, and this fairly presents the claim:

"In a word, the contention of the appellant is that there was no evidence or not sufficient evidence to warrant the court in leaving it to the jury to determine whether or not defendant had acted in willful, wanton, and reckless disregard of the plaintiff's rights, and, unless there was evidence sufficient to warrant such a finding, punitive damages could not be given. The error complained of is that the court left it to the jury to determine this question, when * * * the court should, as defendant's counsel requested, have charged the jury that they could not find punitive damages."

What the court actually said to the jury was that:

"If you shall find in this case that the defendant acted in such a way as to show a wanton and willful disregard of the rights of the plaintiff, you may give what are called punitive damages—damages not intended to compensate the plaintiff for the injury which she has suffered, but intended to punish the defendant for the wrong which it has committed, and to discourage the commission of such wrongs in the future. The amount of such damages depends largely upon what you shall determine to have been the fact with regard to the action of the defendant and its representative on this occasion. * * * If so, the defendant has committed a libel on the plaintiff, and the plaintiff is entitled to recover compensatory damages, and, in addition, may recover punitive damages, if you find that the act of the defendant was such as to show a wanton and willful disregard of the plaintiff's rights."

I am of the opinion that the jury were correctly instructed as to the law, and, if they were, then no error was committed, because there

was sufficient evidence to sustain a finding that the picture was wantonly and recklessly used. It is hardly credible, when the tintype and button pictures are compared and all of the other evidence in the record is considered, that defendant's representative, when he used the button picture, believed it was a picture of the Cavonne woman. He then certainly had information which would have induced a person of ordinary intelligence, before using it in connection with the article, to have made some further investigation. His own testimony bearing upon that subject is significant, and shows that he made no further investigation, notwithstanding the difference between the two pictures. He did not even think it was necessary to consider that subject.

It is also suggested, not by counsel, that the charge referred to was erroneous in that the court instructed the jury that the evidence would not justify a finding of actual malice and withdrew that subject from their consideration; in other words, as I understand the contention, it is that an award for exemplary damages cannot be made, except upon a finding of actual or express malice. This, as I read the authorities, is not the law.

In Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701, it was said:

"So far as the libel was not justified, it was for the jury to determine the amount of the damages to be awarded therefor. If they came to the conclusion from the circumstances and the nature of the charge made that the publication was malicious, in bad faith, or recklessly, carelessly, or wantonly made, they could go beyond compensation and award punitive damages."

In the same case (147 N. Y. 59, 41 N. E. 409, 49 Am. St. Rep. 646) the court said:

"The jury may accord damages which are merely compensatory, or damages beyond mere compensation, called 'punitive' or 'vindictive' damages, by way of example or punishment, when in their judgment the defendant was incited by actual malice or acted wantonly or recklessly in making the defamatory charge."

In Warner v. Press Pub. Co., 132 N. Y. 181, 30 N. E. 393, it was held that:

"A libel, recklessly or carelessly published, as well as one induced by personal ill will, will support an award of punitive damages."

In Smith v. Matthews, 152 N. Y. 152, 46 N. E. 164, the court said:

"The learned counsel for the defendants insists that punitive damages are only recoverable in case of actual malice when the wicked intent to injure exists. The rule is otherwise, and it has been repeatedly held in this state that a libel, recklessly or carelessly published, as well as one induced by personal ill will, will support an award of punitive damages."

And in Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274, 101 Am. St. Rep. 722, the foregoing authorities are cited with approval, and the rule is stated as follows:

"The general rule is that in an action for libel proof by the plaintiff tending to establish the falsity of the alleged libelous publication is evidence of malice, and, if such evidence is introduced, a question for the jury is presented whether the malice is of such a character as to call for punitive damages, and that question is not to be withdrawn from them because the defendant gives evidence which tends to show that there was no actual mal-

ice. We think the foregoing rule is well established by the authorities of this state and elsewhere, and that it must be regarded as the true rule, notwithstanding any expressions found in other cases where the question was not necessarily involved, and which may not be in consonance with it. The doctrine of any such cases will not be followed, but must be regarded as overruled so far as they may be in conflict with this decision."

The charge as a whole conveyed to the jury the correct rules of law, and clearly and concisely stated the issues which they were to determine. The evidence fairly sustains the findings of the jury, and no errors were committed which call for a reversal of the judgment.

I am of the opinion, therefore, the judgment and order appealed from should be affirmed, with costs. All concur.