1. TRUSTS—DEATH OF TRUSTEE—APPOINTMENT OF SUCCESSOR.

The statutory provision that, on the death of the last surviving trustee, the trust shall vest in the Supreme Court, should be read in connection with Code Civ. Proc. § 2818, authorizing the Surrogate's Court to appoint a successor on the death of such a trustee, and the trust vests in the Supreme Court only so far as may be consistent with such power.

2. COURTS—CONCURRENT JURISDICTION—SUPREME AND SURROGATE'S COURTS —SUCCESSOR TO DECEASED TRUSTEE—APPOINTMENT.

The sole surviving trustee of a testamentary trust died, and, on application of his executor to the Surrogate's Court for the appointment of a successor, the parties interested appeared. After filing of a petition, the Supreme Court appointed an agent to carry out the provisions of the trust. *Held*, that the Surrogate's Court had jurisdiction under Code Civ. Proc. § 2818, to appoint a trustee.

3. TRUSTS—APPOINTMENT OF NEW TRUSTEE—CITATION—IRREGULARITIES.

Where, on petition to the Surrogate's Court to appoint a new trustee, the citation fails to indicate that such appointment is sought, the power of the court to make the appointment is not affected where the parties interested have appeared in the proceeding.

4. SAME—APPLICATION FOR APPOINTMENT.

The executor of a deceased trustee, the last of certain testamentary trustees, can maintain a proceeding before the Surrogate's Court for the appointment of a successor where all the parties in interest were cited and appeared.

In the Matter of the Estate of James Brady, Deceased. Motion to vacate order appointing substitute trustee denied.

Turner, Rolston & Horan, for petitioners.
Albert E. Lamb, for respondent.

KETCHAM, S. This is a motion to vacate an order of the former surrogate appointing William E. Philips as substitute trustee under the will of James Brady, deceased, in place of the sole surviving trustee nominated in the will.

The only question presented is that of power to make the order; and, among the facts presented, such as apply to that question are as follows: Under the trust contained in the will, there was to be annually paid to Virginia Washington Post and Annie Hulse, each during her life, a specific sum for income; and, upon the death of either of the two persons last named, there was to be made over to her issue one-half of the body of the trust fund and its accumulations. Mrs. Post died on August 18, 1907, leaving as her issue James Brady Post and George W. Post, Jr. Annie Hulse, now Mrs. Annie Hulse Little, survives, and her children are Julia Brady Adams, George Scrymser Little, and James Brady Little. The sole surviving trustee, John B. De Cue, died on September 29, 1907. On October 8, 1907, Henry C. M. Ingraham, as the executor of the deceased trustee, filed his account of the acts and doings of his decedent as executor and trustee, with his petition asking for its settlement. In this petition all the facts as to the vacancy in the office of trustee, with every other matter necessary to invoke and justify the action of the court in the appointment of a new trustee, were alleged; while, in addition to the prayers appropriate to an accounting, it was prayed that some one be appointed a substituted trustee for the trust created under the will of James Brady for the benefit of Annie Hulse Little and her lawful issue. Upon this petition a citation was issued, directed to all the persons interested both in the settlement of the account and in the trusts described. This citation, served upon all the parties now moving, called them to attend the judicial settlement of the account, but did not call their attention to the prayer for the appointment of a new trustee. In the proceeding thus instituted the parties now moving to vacate the appointment of Mr. Philips duly appeared, on November 8, 1907; and they did nothing more than to appear. On November 18, 1907, the order which is now complained of was made. On November 12, 1907, upon the application of all the beneficiaries under these trusts, the Supreme Court in New York county made its order appointing the Farmers' Loan & Trust Company as its agent and representative to carry out the provisions of the trusts. It is needless to detail the proceeding in which, before the filing of Mr. Ingraham's petition, Mrs. Little, with the written consent of her children, applied to the surrogate for the appointment of the Farmers' Loan & Trust Company, to the trust created for her and her children, or the fact that she thereafter gave to the surrogate notice that she withdrew such application. It is hard to see that a proceeding limited to a request for the appointment of a person therein designated could confer jurisdiction to appoint another person; nor is it easy to derive from the application itself, its treatment by the surrogate, or the attempted withdrawal any suggestion against the power of the surrogate to entertain and determine the later proceeding.

It would ordinarily be admitted that the Surrogate's Court had jurisdiction generally of the subject-matter of an appointment such as is here in question, that its jurisdiction was concurrent with that of the Supreme Court, and that, between the two courts, each holding equal jurisdiction, the one which first acquired jurisdiction of the particular subject and of the persons would be vested with the exclusive power of appointment. This proposition is questioned by the moving parties.

They derive from the expression of the statute, to the effect that upon the death of the last surviving trustee the trust shall "vest" in the Supreme Court, an argument which they express as follows:

"In order to displace the trust vested by the statute in the Supreme Court immediately upon the death of the sole surviving trustee of an unexecuted trust, the Surrogate's Court must exercise its power of appointment in the manner prescribed by law before the Supreme Court has taken actual control and nominated an agent to assist it in executing the trust."

It is therefore claimed that although the surrogate on the 12th of November had before him a pending application for the appointment of a substituted trustee, with abundant jurisdiction of the person, his jurisdiction was ousted by the intervention of the Supreme Court on that day. This seems to overwork the word "vest" as found in the statute. In the mere fact that the trust "vests" in one court is there anything incompatible with the exercise of jurisdiction by another court, which is by statute authorized to appoint an officer to the trust? Can the jurisdiction bestowed upon the surrogate to make the appointment be so reduced by the "vesting" of the trust in the Supreme Court that the surrogate, in order to make his jurisdiction effectual, must not only take prior cognizance of the matter of appointment, but must hasten to the final act before the Supreme Court has assumed to act? While it is possible that, in the act by which the trust was "vested" in the Supreme Court, to be exercised by its agent or representative, the legislative intent was that neither the trust nor its exercise should ever depart from the court in which the trust was "vested," the earlier statute must be read in the light of the later enactment that the surrogate may, upon the death of the sole surviving trustee, choose his successor. Code Civ. Proc. § 2818. The two provisions must be read together, and must be reconciled by every art of construction. The earlier act must be taken as modified, and, if necessary, repealed with respect to any of its provisions inconsonant with the last legislative utterance. By the interpretation thus enforced, it would seem that the law "vests" the trust in the Supreme Court only so far as such vesting may be consistent with the power of the surrogate, not only to entertain a proceeding for the appointment, but to follow such proceeding during his judicial opportunity and leisure to a final determination; and the later enactment would have no adequate or normal force if, while the surrogate was in the act of making his appointment, pursuant to a proceeding in which he had the jurisdiction not only of the general subject-matter, but of the special question and the persons of the parties thereto, his act could be arrested by the action of a court of concurrent jurisdiction which took cognizance only after the surrogate's jurisdiction had been absolutely established. The resort to the Supreme Court was too late if the surrogate acquired complete jurisdiction of the appointment before November 12th.

The question presented must be determined entirely within the limits of the proceeding initiated by the petition of Mr. Ingraham. The surrogate's jurisdiction, if it ever existed, attached before the making of the order of the Supreme Court, and could not be detached by a later assumption of jurisdiction by a court whose jurisdiction as to the particular matter had been anticipated. It will be convenient, first, to

consider the motion only so far as it affects the appointment of a new
trustee of the trust for the benefit of Mrs. Little and her children.
Upon this the sole question is whether or not there were allegations
which disclosed to the court and the parties the facts bearing upon
the proposed appointment, as well as an intention to seek a disposi-
tion thereof, and whether or not, upon the institution of the proceeding,
or in its course, there were brought before the court, for the purpose
of the appointment, the persons of the parties concerned.  An appeal
to the particular jurisdiction of the surrogate was amply made by the
allegations and prayer of the Ingraham petition.  The citation granted
upon that petition, while it did not call the cited parties to answer the
prayer for the new appointment, did bring them into the proceeding
for every purpose which was manifested upon the face of the petition
itself.  Upon the service of the citation they were charged with notice
of all that was contained and proposed in the petition.  They were
called upon to confess or deny the petition and to concede or resist its
prayers.

It is claimed in their behalf that, since the citation did not indicate
that the appointment of a new trustee was sought, no notice was given
of the proposed appointment.  However deficient was the citation, the
question of notice as to any relief embraced within the petition disap-
peared upon their appearance.  It was then no longer a question as to
whether they had been given notice.  They assumed and took notice,
and, having by their own act of appearance incorporated themselves
into the proceeding, they cannot be heard to say that the constructive
knowledge of the purposes of the proceeding, which it was the office
of the citation to bestow, was withheld from them.  It is idle for them,
when they have grasped notice, to say that it was not given.  When,
therefore, they appeared, without answer or other representation to the
court with respect to their views of their own rights, there was ju-
risdiction as to them to make the order complained of, unless they are
enabled to avoid the disposition of their rights as to the appointment
upon some one or more of the grounds which they have presented.  In
this respect they say that the accounting executor was not a necessary
party to a proceeding for the appointment, and that his petition could
not invoke the jurisdiction.  This proposition, in order to serve them,
must be not only that the petitioner's relation to the subject-matter was
such that he had no right or capacity to maintain the proceeding, but
also that because of the remoteness of his relation the court itself could
not be moved at his instance to the exercise of the jurisdiction, which,
it must be confessed, belonged to it.  The executor of the deceased
trustee, even if unnecessary, was at least a proper party.  With the
funds in his hands and under the present duty of accounting therefor
to his successor, his presence in the proceeding for the appointment of
such successor was in the highest sense convenient, and therefore prop-
er.  But, whether his relation to the subject-matter made him a proper
party or not, the jurisdiction of the court cannot be called into ques-
tion, in view of the appearance, in answer to his petition, of all the
parties who are now seeking to avoid that jurisdiction.  Even if, in
asking for the nomination of a substituted trustee, the accounting ex-
ecutor was a volunteer or a mere intruder, the appearances would sanc-

tion and confer all the jurisdiction necessary to make the order. There was no objection to the petitioner's standing by any of the persons appearing; and, upon their appearance in a case, however informal and defective was its initiation, the action of the court, as to a matter well within its general jurisdiction, was invited and confirmed. Had these parties answered, presenting their views and claims as to the appointment, it could not be denied that, after the hearing and rejection of their allegations and arguments, the appointment of a trustee, not of their nomination, would have been valid against them. A fair test of the validity of this order in this respect is supplied if it be supposed that they were present at the time of the making of this order, had then joined in the application of the petitioner for the appointment of a new trustee, and had taken no issue either as to the right of the petitioner to present the matter or as to the power of the court to consider it, beyond their request for the appointment of a person upon whom the choice of the court did not fall. Clearly as much of jurisdiction follows from their appearance and default as could have resulted from a more active submission to the jurisdiction over their persons and rights. The surrogate had the general jurisdiction. The petition averred the facts which made such jurisdiction applicable to the specific subject. The proceedings amply apprised the cited parties of an intention to secure the appointment of a new trustee by the surrogate; and all the parties now claiming a grievance participated in the proceeding by their appearance.

So far as the motion is addressed to that part of the order which appointed a substituted trustee of the trust for the benefit of Mrs. Post and her issue, the parties now moving have no concern, and therefore no standing to be heard. They are neither necessary nor proper parties with respect to that branch of the trust.

The motion should be denied.

Motion denied.