RUNK v. THOMAS.

(Supreme Court, Appellate Division, First Department. June 3, 1910.)

1. COURTS (§ 92*)—JUDICIAL OPINION—DICTA.

The language of a judicial opinion should be confined to and limited by the particular facts and issues of the case; all other statements therein being dicta, and not binding in subsequent cases.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 335; Dec. Dig. § 92.*]

2. TRUSTS (§ 298*)—ACCOUNTING—JURISDICTION OF COURTS—SURROGATE'S COURT—FINAL ACCOUNTING—ACCOUNTING BY TRUSTEE APPOINTED BY COURT—"TESTAMENTARY TRUSTEE."

Code Civ. Proc. § 2472, gives each surrogate jurisdiction to control and settle the accounts of testamentary trustees, and to remove them and appoint a successor. Section 2514 provides that, unless a contrary intent is expressly declared or plainly apparent from the context, the expression "testamentary trustee" includes every person who is designated by a will or by any competent authority to execute a trust created by will. 2 Rev.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

St. pt. 2, c. 6, tit. 3, § 66, as amended by Laws 1850, c. 272, as amended by Laws 1866, c. 115, as amended by Laws 1867, c. 782, as substantially re-enacted by Laws 1871, c. 482, was re-enacted as Code Civ. Proc. § 2802, as amended by Laws 1885, c. 518, and permits any trustee created by will or appointed by any competent authority to execute any trust created by will to file at any time an intermediate account and to annually render and finally judicially settle his accounts before the surrogate having jurisdiction, and provides that in such annual accountings the surrogate shall have commissions, etc. Before the amendment of 1885, section 2802 merely provided that a testamentary trustee could at any time file an intermediate account and the vouchers in support of it with the surrogate having jurisdiction of the estate. *Held* that, while under section 2802 a trustee appointed by the Supreme Court upon the death of the testamentary trustee could file intermediate accounts and render annual accounts to the surrogate's court, neither that section, construed in view of the amendment thereto, nor the other sections of the Code, authorized the Surrogate's Court to allow a final voluntary accounting by such trustee upon the termination of the trust; only the Supreme Court which appointed the trustee having jurisdiction of such accounting.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 417; Dec. Dig. § 298.*

For other definitions, see Words and Phrases, vol. 8, p. 6932.]

3. TRUSTS (§ 169*)—REMOVAL OF TRUSTEE—APPOINTMENT OF SUBSTITUTED TRUSTEE—AUTHORITY TO APPOINT—AUTHORITY OF SURROGATE'S COURT.

Where a testamentary trustee is removed by the Surrogate's Court for the statutory causes, it is not necessary to apply to the Supreme Court to appoint a substituted trustee, even upon the death of the sole surviving trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 224; Dec. Dig. § 169.*]

Clarke, J., dissenting.

Appeal from Special Term, New York County.

In the matter of the application of Charles A. Runk, as substituted trustee under the last will and codicil of Annie Joy, deceased, against Abner C. Thomas, a surrogate of the county of New York for a writ of mandamus. From an order denying the application, applicant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Charles B. Hart, for appellant.
Abner C. Thomas, pro se.

McLAUGHLIN, J. In December, 1904, the appellant was by an order of the Supreme Court appointed a substituted trustee under the last will and testament of Annie Joy, deceased. On the 9th of March, 1910, he presented to the Surrogate's Court of the county of New York a petition in due form, praying that his account be judicially settled, and that a citation to attend the settlement issue to the persons interested therein. The respondent, who presided in that part of the Surrogate's Court to which the petition was presented, refused to issue a citation on the ground that he had no jurisdiction to entertain the proceeding, and the appellant then applied to the Supreme Court for a writ of mandamus to compel him to do so. The application was denied and the appeal is from such order. In opposition to the applica-

tion for the writ, the learned surrogate presented his affidavit in which he frankly stated that in refusing to entertain the proceeding he was controlled by the decision of this court in Matter of Leavitt, 135 App. Div. 7, 119 N. Y. Supp. 769, that he had not the slightest personal objection to entertaining the proceeding, but, as he understood the opinion in the case referred to, he was "without jurisdiction in the premises." On the argument of the appeal, he presented a brief in which he joined with the appellant in urging that he did have jurisdiction, and that the decision of this court in Matter of Leavitt was erroneous, in that it was predicated upon a misconception of the provisions of the statute relating to the power of the Surrogate's Court with reference to the settlement of the accounts of testamentary trustees.

The decision in Matter of Leavitt, supra, is not only not decisive of this question, but has no application to it. All that was there presented was an appeal from an order and decree of the Surrogate's Court appointing a substituted trustee to serve with two other substituted trustees then acting who had been appointed by the Supreme Court. The order and decree appealed from were reversed by this court on the ground that sufficient facts were not set forth to justify the appointment of an additional trustee, or that such appointment would be for the interest of the cestui que trust or the trust estate. Attention was also called to the fact that since the Supreme Court had already assumed jurisdiction over the trust, and had appointed the two trustees then serving, an application for the appointment of an additional trustee ought to be made to it instead of to the Surrogate's Court, and, if the decree and order appealed from were permitted to stand, the administration of the trust would be in trustees primarily accountable in different courts. The question whether a testamentary trustee appointed by the Supreme Court could under any circumstances account in the Surrogate's Court was not before the court, and what was said upon that subject was only by way of argument, and not decisive of the question now presented. As was said in Colonial City Traction Co. v. Kingston City Ry. Co., 154 N. Y. 493, 48 N. E. 900:

"It was not our intention to decide any case but the one before us, ✲ ✲ ✲ and our opinion should be read in the light of that purpose. If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion, and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant, and, when it wanders from the point at issue, it no longer has force as an official utterance."

In Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274, 101 Am. St. Rep. 722, the court, after referring with approval to the language just quoted, further stated that:

"In applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration, when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different. When this rule is followed, much of the misapprehension and uncertainty that often arises as to the effect of a decision will be practically avoided."

In the case now before us, upon the death of the sole surviving trustee, the trust, so far as it remained unexecuted, vested in the Su-

preme Court, to be executed by some person appointed by it. Section 20, Personal Property Law; section 111, Real Property Law. The Supreme Court accordingly appointed the appellant and the trust which he was to execute has been terminated by the death of the cestui que trust, and the only question presented is whether the trustee can, upon his own application, no objection being made thereto, account in the Surrogate's Court.

The trust having vested in the Supreme Court and it having appointed the appellant as its agent to execute the same, it would seem that orderly procedure requires such agent upon the termination of the trust to account to the principal, viz., to the court which appointed him, and to that court alone. What was said by way of argument in Matter of Leavitt, supra, and Matter of Hazard, 51 Hun, 201, 4 N. Y. Supp. 701, is quite applicable to such question. But, it is urged, and with considerable force, that certain sections of the Code of Civil Procedure have conferred jurisdiction upon the Surrogate's Court not only to entertain a proceeding for a voluntary settlement of the accounts of a testamentary trustee appointed by the Supreme Court, but that it may compel such settlement. After a careful consideration of the sections referred to, I am unable to reach such conclusion. Section 2472 provides that each surrogate has jurisdiction " * * * (3) to direct and control the conduct and settle the accounts of executors, administrators and testamentary trustees; to remove testamentary trustees and to appoint a successor in place of a testamentary trustee so removed." The proceedings in the Surrogate's Court relating to testamentary trustees are regulated by sections 2802–2820, which provide for both voluntary and compulsory accountings, the judicial settlement of accounts, and the resignation and removal of testamentary trustees and the appointment of their successors. Section 2514 provides that except where a contrary intent is expressly declared, or is plainly apparent from the context, "(6) the expression 'testamentary trustee' includes every person * * * who is designated by a will, or by any competent authority to execute a trust created by a will. * * * "

The Legislature undoubtedly intended, by these sections, to confer upon the Surrogate's Court full and complete jurisdiction over the administration of trusts created by will, but I do not believe it intended to extend this jurisdiction, at least to its full extent, to cases where the trust had vested in the Supreme Court, and the same was being executed by a trustee appointed by it. It cannot be denied that such a trustee would fall within the definition of a "testamentary trustee," but, if these sections of the Code are to be taken literally, then such a trustee could not only be compelled to account in the Surrogate's Court, but that court might remove or discharge him immediately after he had been appointed by the Supreme Court. The effect of this would be to reverse an order of the Supreme Court by which the appointment was made and to leave uncanceled and undischarged the bond which the trustee gave. I cannot believe that the Legislature ever intended to confer such power upon the Surrogate's Court, and, if it did, it may well be doubted whether its act is valid.

If so, a court having only such power as is conferred upon it by statute may nullify the act of a court whose powers are derived from the Constitution of the state. As was said in Matter of Hazard, supra:

"It is undoubtedly true that the loose and sweeping enactments of the Code relating to the jurisdiction of the Surrogate's Court are susceptible of different constructions, * * * and we must, therefore, find our way as best we can to an interpretation which seems to be reasonably consistent with some intelligent intention, and which interpretation will fix, with reasonable certainty and without circuity of action, the rights of all parties interested."

An examination of the statutes enacted before the sections of the Code referred to shows that prior to 1850 the Surrogate's Court had no jurisdiction to take the account of a testamentary trustee. Section 66, tit. 3, c. 6, 2 Rev. St., provided that:

"The last preceding section [which related to the final settlement of the accounts of executors and administrators] shall not extend to any case where an executor is liable to account to a court of equity by reason of any trust expressly created by any last will or testament."

The statute as it thus stood imposed an additional burden and necessitated additional expense where the same persons named in a will as executors were also appointed trustees, and to obviate the same the statute was amended (chapter 272, Laws 1850) so as to provide that "any trustee created by any last will or testament, or appointed by any competent authority to execute any trust created by any such last will or testament, or any executor or administrator with the will annexed, authorized to execute any such trust, may from time to time render and finally settle his accounts" before the surrogate, whose decree on such settlement should be given full force and effect. The obvious purpose of the amendment was to enable an executor who was also trustee to account in both capacities at the same time in the Surrogate's Court. It was not designed to apply to a trustee appointed by the Supreme Court at all, or, if so, only to the extent of permitting him to settle "from time to time" during the continuance of the trust; e. g., where an administrator with the will annexed had also been appointed by the Supreme Court as substituted trustee. Section 66 was again amended (chapter 115, Laws 1866) without substantial or material change with respect to the question now under consideration, and the following year (chapter 782, Laws 1867) the surrogate was given power to compel "testamentary trustees and guardians" to account, in the same manner as executors, administrators, and guardians, and this provision was substantially re-enacted by chapter 482 of the Laws of 1871, which also gave the surrogate power to require security from and to remove "testamentary trustees or guardians." The sole purpose of these statutes, as it seems to me, was to further and carry out the scheme of the earlier enactments in extending the jurisdiction of the Surrogate's Court, but it is to be observed that they relate only to "testamentary trustees," and conferred no power upon the Surrogate's Court to compel a trustee appointed by the Supreme Court to account or to remove such trustee.

In 1880 the various provisions of the statute relating to the subject were incorporated into and became a part of the Code of Civil Procedure (see sections heretofore cited), and I have no hesitation in

reaching the conclusion that, notwithstanding the definition of the term "testamentary trustee" as therein used, no jurisdiction was conferred upon the Surrogate's Court to compel a testamentary trustee appointed by the Supreme Court to account or to remove him; and, while that question is not directly involved in the one now before us, it may be considered in so far as it will enable us to place a reasonable interpretation upon the other sections of the Code. The original provision of the statute (section 66), as amended by the acts referred to, was apparently re-enacted as section 2802 of the Code of Civil Procedure, and it is under this section, principally, that the surrogate claims jurisdiction in the present case. That section provides that "any trustee created by any last will and testament, or appointed by any competent authority to execute any trust created by such last will and testament, may at any time file an intermediate account and may also annually render and finally judicially settle his accounts before the Surrogate of the county having jurisdiction, * * *" and that "in all such annual accountings of such trustees" the surrogate shall allow commissions, etc. This section, it will be observed, refers only to annual accountings and settlements, and it seems to me like the statute from which it was derived, applies only to accountings from time to time during the continuance of the trust. As the section was originally enacted, it read simply that:

"A testamentary trustee may, at any time, file an intermediate account, and the vouchers in support of it, with the surrogate having jurisdiction of the estate."

It was subsequently amended (chapter 518, Laws 1885) to read as it now does. The amendment is quite significant. If the definition of "testamentary trustee" had been adhered to, and included a trustee appointed by the Supreme Court, there was no occasion to make any change, for the succeeding sections were sufficient to cover all cases. But by the amendment the same language used in the definition was repeated at the beginning of the section, and the only reason which I can see is that the Legislature must have realized, despite the definition, that the succeeding sections providing for a compulsory accounting and settlement, and for the removal of a testamentary trustee, were not intended to, and did not, apply to a trustee appointed by the Supreme Court.

My conclusion is that, while section 2802 of the Code of Civil Procedure may apply to a trustee appointed by the Supreme Court to execute a trust created by will, that is the only section which could apply to such trustee, and it simply permits him "to annually render and finally judicially settle his accounts" in the Surrogate's Court. This is not such an accounting as is sought in the present case. Here the trust has terminated, and the settlement of the accounts of the trustee will entitle him to a final discharge.

If the foregoing views be adopted, then the provisions of the Code relating to the subject present a logical scheme for the control of testamentary trustees. The Surrogate's Court now has jurisdiction to appoint and remove a testamentary trustee for certain defined causes, and there is no occasion, when a removal is asked on the grounds speci-

fied, to resort to the Supreme Court for the appointment of a substituted trustee, even in case of the death of the sole surviving trustee. Royce v. Adams, 123 N. Y. 402, 25 N. E. 386; Conant v. Wright, 22 App. Div. 216, 48 N. Y. Supp. 422, affirmed 162 N. Y. 635, 57 N. E. 1107; Matter of Russell's Estate, 65 Hun, 619, 19 N. Y. Supp. 743; Matter of Valentine, 3 Dem. 563; Matter of Brady, 58 Misc. Rep. 108, 110 N. Y. Supp. 755; Matter of Chase, 40 Misc. Rep. 616, 83 N. Y. Supp. 62.

As already pointed out, if a trustee appointed by the Supreme Court could account in the Surrogate's Court and there be discharged, his bond would still remain in force, and the only way that it could be gotten rid of and the sureties thereon released would be by a new proceeding in the Supreme Court. Such result and such conflict of authority should be avoided if possible. Matter of Hazard, supra. It is true, as contended, that the Hazard Case simply holds that the administrator of a deceased testamentary trustee appointed by the Supreme Court cannot be compelled to account in the Surrogate's Court, under the literal interpretation of section 2606 of the Code of Civil Procedure, but, as was pointed out in the opinion, if the Surrogate's Court could have compelled the decedent to account, there is no apparent reason why section 2606 should not have been worded so as to permit the same court to compel his administrator to account, and this indicates, as it seems to me, it was not intended by the other provisions of the Code to confer such power upon the Surrogate's Court.

It may be conceded, as intimated, that under section 2802 a trustee appointed by the Supreme Court may file an intermediate account and annually render and settle his accounts in the Surrogate's Court, but I am of the opinion that is the extent of the jurisdiction conferred by that section upon the Surrogate's Court. Such court has not the power to remove a testamentary trustee appointed by the Supreme Court, accept his resignation, compel him to account, or finally discharge him.

I am of the opinion, therefore, that the testamentary trustee appointed by the Supreme Court should, upon the termination of his trust, account to that court and be discharged by it, and for this reason the learned surrogate properly refused to entertain the proceeding.

The order appealed from should be affirmed without costs to either party.

INGRAHAM, P. J., and SCOTT and DOWLING, JJ., concur. CLARKE, J., dissents.